415 P.2d 463

Manuel M. SANDOVAL, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Magma Copper Company, Respondents.

No. I CA–IC 54.

Court of Appeals of Arizona.

June 17, 1966.

Chris T. Johnson, Phoenix, for petitioner.

Twitty, Sievwright & Mills, by John F. Mills, Phoenix, for respondent Magma Copper Co.

THOMAS TANG, Judge of the Superior Court.

The Petitioner herein seeks certiorari to set aside an award of the Industrial Commission denying compensation for hernia.

The Petitioner, Manuel M. Sandoval, an underground motorman employed by respondent employer hurt his lower back on August 23, 1964. The accident occurred while he was descending a ladder. He slipped because the rungs were wet, caught himself and hung suspended for some time. He reported at the Employer's Hospital to W. W. Forbes, M.D. who diagnosed the condition as a low back strain. Dr. Forbes examined him again on August 31, 1964, and noted tenderness in the lower back at the level of the S–1 sacral joint and over the lower area of the sacrum with pain radiating to the left groin area.

Petitioner testified that he suffered pain in his back and in the front groin area of the body and complained to his partner Richard Grabe, to his company foreman and to Dr. Forbes.

Howard W. Finke, M.D., Chief Surgeon at the Employer's Hospital saw the petitioner on October 15, 1964. The petitioner had generalized complaints of pain in his left groin, back and buttocks, which he stated became more intense whenever he was chilled.

On November 2, 1964, the petitioner reported complaints to Dr. Finke of a burning

·pain and a slight bulging in the left lower inguinal region. Dr. Finke's examination confirmed this bulging condition and noted also an enlarged inguinal ring suggestive of a beginning hernia.

On November 6, 1964, Dr. Finke again examined the petitioner, and there was definitely evidence of a left inguinal hernia and a slight bulging also in the right inguinal area. During this entire period, the petitioner was receiving treatment for his back injury, which had aggravated and made symptomatic a pre-existing arthritic condition.

The employer on November 8, 1964, denied liability for the hernia condition. The Commission held a hearing on the compensability of the hernias, at Superior, Arizona, on April 23, 1965.

At this hearing the Commission was represented by counsel, the company was represented by counsel, and the claimant appeared for himself. The claimant is of Mexican descent and speaks no English. The union president acted as interpreter for the claimant and all statements attributed to the claimant were translated by him.

Following the hearing, the referee issued his report dated May 6, 1965, finding that the accident of August 23, 1964 did not cause the claimant's left or right inguinal hernias.

On June 4, 1965, the Commission adopted the report and issued its final award finding that the accident of August 23, 1964 did not cause either of the petitioner's hernias and denied responsibility for them. The petitioner thereupon filed this application for Writ of Certiorari to review the order of the Commission.

■ The requirements governing compensation for hernia are contained in Arizona Revised Statutes Section 23–1043 and this provision has been held to be sui generis. Williams v. Industrial Commission (1949) 68 Ariz. 147, 202 P.2d 898. As set forth in the statute, the conditions for compensability require: an industrial accident, as an immediate causative factor calling attention to the hernia, accompanying pain and the communication of these facts to one or more persons. (Morris v. Industrial Commission, 3 Ariz.App. 393, 414 P.2d 996, Filed 3 June 1966). In construing these requirements, it has been held to be the policy that they be given a liberal construction in favor of the injured workman. Consolidated Vultee Aircraft Corporation v. Smith (1945) 63 Ariz. 331, 162 P.2d 425.

In this case the Commission has found that the accident did not cause the hernial condition of the petitioner. The only testimony presented was that of the claimant and Dr. Finke. Medical testimony concerning causation was through Dr. Finke only. Dr. Finke testified as to the petitioner's left inguinal hernia that it is possible that the hernia could have developed spontaneously without any traumatic or other motivating force; but he also testified that it was also possible that the accident of August 6, 1964 could have precipitated or caused the hernia to develop. Then the doctor was asked a further question as to the probabilities.

His testimony from Page 14 of the transcript of the record is as follows:

"Q. Now, Doctor, with respect to his left inguinal hernia in your opinion is it possible that this hernia could have developed spontaneously without any traumatic or other intervening force?

A. Well, we know that they do. They do develop spontaneously.

Q. So your answer is it is possible?

A. Yes, it is possible.

Q. Is it also possible that the accident of August 1964 could have precipitated the hernia or cause it to develop?

A. Yes, that is possible also. Considering—well, we can go into that a little later perhaps.

Q. In your opinion, which of these two possibilities was the probable cause of Mr. Sandoval's hernia?

A. The aspects of the case disturbs us—I mean by 'us' Doctor Forbes

and myself on this case, is that we cannot really explain the rather prolonged interval between the accident and the development of the hernias. That seems somewhat unusual. But by the same token the type of injury that Mr. Sandoval sustained when his feet slipped out from under him on the ladder and he was hanging by his hands and the sudden increased abdominal pressure that must have occurred, that would have to occur under those circumstances, led us to believe that there is a possibility that the hernias could have been initiated.

Some weakness could have developed at that time which was not evident soon after the accident. And in order to give the patient the benefit of the doubt we have felt possibly the weakness in the fascia and the muscle of the area could have been initiated by that accident. But we are still at a loss to explain why it took so long for the hernias to develop. That is about the fairest answer I can give to your question.

Q. What about the right inguinal hernia? Do you have any opinion as to what caused that to appear?

A. Well, it would be the same causes or reasons; the increased abdominal pressure. The sudden increase of the abdominal pressure when he was hanging by his hands all of a sudden when his feet slipped out; the slipping and jerking mechanism."

The foregoing is the only testimony before the Commission as to causation; although, as indicated by the testimony, this opinion as to causation was shared by Dr. Forbes, the other medical consultant who attended the petitioner.

Based on the foregoing state of the evidence, although there was some discussion that it is possible that hernias may develop spontaneously without being induced by trauma, the fair import of the testimony is that the probabilities favor the conclusion that this was an injury from an accident arising out of and in the course of employment.

As stated in Jones v. Industrial Commission (1957) 81 Ariz. 352, 306 P.2d 277, the Commission is not allowed to substitute its judgment on matters lying exclusively within the field of medical science. We submit that the causal relationship between this accident and the hernias was necessarily within the singular knowledge of medical experts, and that the findings as expressed are conclusive upon the Commission.

There being no reasonable evidence to sustain the finding of the Commission, it is ordered that the award be set aside.

CAMERON, Acting C. J., and DONOFRIO, J., concur.

NOTE: Judge HENRY S. STEVENS having requested that he be relieved from consideration of this matter, Judge THOMAS TANG was called to sit in his stead and participate in the determination of this decision.