439 P.2d 542

**REYNOLDS METALS COMPANY,**
Petitioner,

v.

The **INDUSTRIAL COMMISSION** of Arizona, and George Carl Hauser, (Deceased), Anna L. Hauser, (Widow), Respondents.

**No. 1 CA–IC 154.**

Court of Appeals of Arizona.
April 8, 1968.

Snell & Wilmer, by Bernald C. Porter, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Glen D. Webster, Phoenix, for respondent, Industrial Commission.

Tupper, Skeens & Rapp, by Edward Crehan Rapp, Phoenix, for respondent, Hauser.

CAMERON, Chief Judge.

This case is before the Court on petition of defendant-employer, Reynolds Metals Company, for a writ of certiorari to review the lawfulness of an award and finding of the Industrial Commission of Arizona. The award issued on 31 May 1967 found that George Carl Hauser, decedent, died on 8 May 1966 the cause of death being a myocardial infarction. In addition the award found that the decedent sustained an injury arising out of and in the course of his employment on 6 May 1966 which subsequently caused his death. On the basis of these findings, the Commission ordered that the widow be awarded death benefits.

We are called upon to determine whether the facts are sufficient to reasonably support a finding by the Commission that the myocardial infarction of 6 May 1966 was an injury arising out of and in the course of decedent's employment with the respondent Reynolds Metals Company.

The decedent was employed by the respondent-employer as a maintenance mechanic. He had been employed in this position since October 1947 and was 61 years old on 6 May 1966. On that date the decedent and a fellow-employee, Bill Smith, were assigned to find the largest aluminum billet butt on the floor at the number two press, weigh it, and report its weight to the foreman. The decedent and Mr. Smith selected the largest one from between 10 and 15 butts at the location of the press which the testimony indicated weighed 84 pounds. The decedent picked up the billet butt and proceeded to carry it to the scales, a distance of approximately 150 feet. He first carried it to a run-out table approximately 60 feet away, placed it on the table, jumped over the table, and then picked up the butt and carried it the rest of the distance to the scale. The two men weighed the billet butt and Mr. Smith removed it from the scale.

Both men then proceeded to weigh themselves. They then headed for the maintenance crib, and after going about 50 yards, Mr. Smith stopped to talk to a fellow-worker. After talking for a couple of minutes, he turned around and noticed that the decedent was lying on his back across the number three press run-out table. The decedent was unconscious. The company nurse was called to the scene in an ambulance, and she testified that his color was "cyanotic" or purplish, and that she administered oxygen and had the decedent removed by stretcher to the first aid room. The oxygen brought him to consciousness, and he was able to give her the name of his family physician, Dr. Hatch. The nurse consulted with Dr. Hatch, and on his advice took the decedent by ambulance to Good Samaritan Hospital where he was admitted to the emergency room and was examined by Dr. Albert Eckstein.

Dr. Eckstein attempted to persuade the decedent to remain at the hospital for further observation and treatment. The decedent refused to do this and returned to his home. Later in the afternoon he returned to his place of employment, and berated the office nurse for having notified his wife of his indisposition. He also picked up some of his personal belongings at that time. The following day, Saturday, 7 May 1966, he again returned to the plant to clean out his locker. That same evening Mr. Smith and a fellow-worker visited the decedent at his home. He was apparently in good spirits, and was walking around contrary to the doctor's recommendation. Later that evening at approximately midnight he experienced chest

pains, and was returned to the hospital and placed in the intensive care unit. He died at 5:10 p. m. on 8 May 1966.

His surviving widow filed an application for compensation on 24 June 1966, and the Commission entered an award and findings for death benefits on 4 November 1966. The employer filed a timely protest and petition for hearing, and formal hearings were held on 24 February 1967 and 9 March 1967. Following this last hearing the Commission issued the award complained of reaffirming its findings of 4 November 1966.

The petitioner has the burden of proof in proceedings before the Industrial Commission, Moore v. Industrial Commission, 2 Ariz.App. 143, 406 P.2d 861 (1965); Wheeler v. Industrial Commission, 94 Ariz. 199, 382 P.2d 675 (1963), and this is true in heart cases:

"In order to establish a compensable claim petitioner must sustain the burden of proving a recognizable casual connection between the employment and the accidental injury, or more specifically in a case such as this, he must sustain the burden of proving that the exertion of his job precipitated the heart attack." Thiel v. Industrial Commission, 1 Ariz. App. 445, 447, 404 P.2d 711, 713 (1965).

This Court, however, in deciding whether findings and awards of the Commission in compensation proceedings are reasonably supported by the evidence examines the evidence in the light most favorable to sustaining the award of the Industrial Commission. Bedel v. Industrial Commission, 5 Ariz.App. 470, 428 P.2d 134 (1967).

The safety director of the employer and two of its maintenance foremen together with Mr. Smith, the co-worker of the deceased, testified as to the nature of the work done by the maintenance men. This testimony showed that the maintenance men did a considerable amount of heavy lifting in the course of their duties, but that most of the carrying of heavy loads was done with mechanical devices such as carts, cranes, and other means. The fore-

man who assigned the decedent and Mr. Smith to this job testified that he did so because he felt it would require two men to move the heavy billet butt. In addition, he testified that he told the men if the billet butt they found was too large they should get a car and push it to the scales on the car. Mr. Smith, in his testimony, indicated his distress at the decedent's insistence upon performing the task unaided. The testimony indicates that in the opinion of men familiar with decedent's duties, and familiar with his ability, that carrying an 84 pound billet butt the distance of approximately 150 feet was considered by them to be a strenuous activity.

By agreement of counsel, both of the medical experts, who later testified, were present and listened to the previous testimony concerning the duties of the maintenance men, and the actions of the decedent, the weight of the billet butt and the distance he carried it just prior to his being stricken. There was a conflict in the medical evidence given by the two medical experts. Dr. Ehrlich testified that there was no causal effect between the decedent carrying the weight for the given distance and the heart attack that subsequently occurred. Dr. Eckstein, the decedent's attending physician, testified that the carrying of the 84 pound weight a distance of 120 to 150 feet "precipitated his (Mr. Hauser's) myocardial infarction and subsequent death". The Commission resolved this conflict in favor of the petitioner. The privilege and duty of resolving conflicts in evidence rests on the Industrial Commission. Eck v. Industrial Commission, 1 Ariz.App. 505, 405 P.2d 296 (1965); Nye v. Industrial Commission, 5 Ariz.App. 165, 424 P.2d 207 (1967).

The evidence reasonably supports the award and findings of the Commission.

Award affirmed.

DONOFRIO and STEVENS, JJ., concur.