454 P.2d 591

**Kenneth Eugene JONES, Petitioner,**

v.

**The INDUSTRIAL COMMISSION, Respondent,**

**Career College of Cosmetology, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 234.**

Court of Appeals of Arizona.

May 14, 1969.

Rehearing Denied June 17, 1969.

Review Denied July 8, 1969.

Chris T. Johnson, Edgar M. Delaney, Phoenix, for petitioner.

Robert D. Steckner, Acting Chief Counsel, for The Industrial Commission of Arizona.

Robert K. Park, Chief Counsel, by Arthur B. Parsons, Phoenix, for State Compensation Fund.

DONOFRIO, Chief Judge.

This case is before the Court by writ of certiorari to review the lawfulness of an award and findings of the Industrial Commission of Arizona.

The petitioner, Kenneth Eugene Jones, suffered an acute coronary insufficiency while at work on December 15, 1966. He was employed as President of the Career College of Cosmetology, a position which involved both administrative and teaching duties. The question presented by this appeal is whether the petitioner sustained an injury by accident arising out of and in the course of his employment on December 15, 1966.

The record presents the following fact situation. The petitioner was born on March 17, 1915, in Pennsylvania. He worked there as a barber and moved to Arizona where he continued to work as a barber for about two years. He became licensed by the State of Arizona as a cosmetologist in 1951, and a licensed instructor of cosmetology in 1952. In 1955 he owned and operated Eugene's Beauty Salon in which he employed eight beauticians and two manicurists. In that year he suffered a coronary thrombosis and myocardial infarction and has since been under the care of Dr. Ashton Taylor, receiving checkups approximately each six months. In 1960 Mr. Jones sold the beauty salon and acquired a small salon in Sunnyslope. In April 1965 he became president of a corporation called the Career College of Cosmetology which opened a school at 1515 East Bethany Home Road, Phoenix, for the training of beauticians. He also operated a beauty salon at Westown. The physical facilities at the school were sufficient for training as many as forty students at one time. In November 1965 a second comparable school was started at 1818 West Bethany Home Road. Much of the planning and all the ordering of supplies and fixtures was done by Mr. Jones. Thereafter he was in charge of supervising both schools, each of which had two instructors. His duties included interviewing prospective students and teaching "beauticians professional ethics" as well as hairsetting, styling and waving. About fifty percent of each student's time at the school was spent in practicing on patrons and some of Mr. Jones' time was spent in the "clinic" observing and supervising the students in their work. In August or October of 1966 the Westown salon was sold. Also, in September of 1966 a former employee returned from Hawaii and assumed some of the petitioner's administrative duties. Nevertheless, for the three-month period

preceding the episode of December 15, 1966, the petitioner worked from 7:30 a.m. each weekday, including Saturdays, until 6:30 p.m. He did not work at night or on Sunday.

The petitioner testified that about the middle of October he started having frequent headaches, usually in the morning while at school, which lasted from one-half hour to one hour or one and one-half hours. He saw Dr. Taylor on November 14, 1966, for a regular checkup and at this time Dr. Taylor's records indicate that the petitioner denied the occurrence of headaches when questioned about this. The petitioner went to work as usual on December 15, 1966, and about 10:30 a.m. after returning to his office from the drinking fountain he slumped to the carpeted floor in a semi-conscious state, and was taken directly to the hospital where he was seen by Dr. Taylor who at first feared he had suffered a myocardial infarction, but later diagnosed this episode as one of acute coronary insufficiency.

The Commission issued the award complained of on August 26, 1968. It finds, "applicant did not sustain an injury by accident arising out of and in the course of his employment on December 15, 1966."

The petitioner herein has the burden of proof in proceedings before the Industrial Commission to show that the conditions of his employment bore a causal relationship to his acute coronary insufficiency. Hudgens v. Industrial Commission, 83 Ariz. 383, 321 P.2d 1039 (1958); Paulley v. Industrial Commission, 91 Ariz. 266, 371 P.2d 888 (1962); Roberts v. Industrial Commission, 1 Ariz.App. 449, 404 P.2d 715 (1965); Reynolds Metals Company v. Industrial Commission, 7 Ariz.App. 379, 439 P.2d 542 (1968).

Where the result of an accident for which workmen's compensation is claimed is of such a nature that it is not clearly apparent to the ordinary layman, the physical condition of the claimant can usually be ascertained only by expert medical testimony. Potter v. Industrial Commission, 99 Ariz. 126, 407 P.2d 88 (1965). In the instant case the proof falls short of establishing a causal relationship between the petitioner's coronary insufficiency and the conditions of his employment. This Court has carefully reviewed the record before it, and finds that the evidence is sufficient from which the Commission could find that the evidence fails to show this necessary causal relationship. The petitioner presented testimony by his attending physician in an effort to prove that a causal relationship existed between the coronary insufficiency and his work. Throughout his testimony the doctor made it clear that he was making an assumption that continued stress and anxiety are contributing factors in episodes of coronary disease. Relating to this, he testified:

"Q What bearing does stress and anxiety have upon the build-up of cholesterol in the blood?

"A Well, again you are asking a question that the whole medical world would like to know. We do recognize that there is a situation called stress elevation of cholesterol. And we also recognize that, under stress, there is a certain thickening of the blood which makes it more susceptible to clotting.

"Q That is an extremely stressful situation you are talking about, is it not, sir?

"A Or chronic stress. For example, this is the type of thing that executives tend to have more often than the wage earner or the working man, but it is common medical assumption; *whether it is correct or not, I am not the one to say*, but it is common medical assumption that continued stress and anxiety are indeed precipitating factors in episodes of coronary disease. My initial statement that it is caused by degenerative process is still true. This is the underlying cause for it. The immediate precipitating cause can certainly be either a single stressful episode or continued chronic stress." (Emphasis supplied)

And also,

"Q From a medical standpoint, purely medical standpoint, you would not say there was a relationship, I take it, is that right?

"A. That is correct. My initial letter of April 18th would still stand as far as the straight medical relationship is concerned."

The letter of April 18th to which the doctor referred in his testimony stated:

"In my opinion, Mr. Jones has coronary heart disease which had its onset in 1955, and has continued up to the time of his episode of coronary insufficiency on December 15, 1966. I do not consider that he had any specific accident on that date.

"It is my opinion that the occurrence of his attack on December 15, 1966, while at work was coincidental and not causally related to his occupation."

Following this letter, which was addressed to the Commission, the doctor, in a "To Whom It May Concern" letter on June 19, 1967, stated:

"If we assume that stress, worry and anxiety are indeed significant factors in precipitating a coronary accident, then there may indeed be reason to interpret this episode of Mr. Jones as having relationship to his work. While it is commonly assumed that stress, anxiety and worry do play a part in such episodes, *I know of no scientific evidence that will support this unequivocally.* Nevertheless, it is a reasonable medical assumption. Also, if the entire question is viewed with the knowledge that the Supreme Court considers any factors which contribute to aggravate, precipitate or

hasten the attack as being industrially related, then again, there may be reason to reconsider my previous statement. Therefore, if overwork, stress and strain were indeed present in his job, and if the courts hold that contributing factors may be considered as truly causative, then it would be my opinion that his episode of coronary insufficiency, which he suffered on December 15, 1966, is causally related to his occupation." (Emphasis supplied)

A stipulated hypothetical question was submitted to the Medical Advisory Board which reported the following conclusion:

"As to the question of whether or not his work activity from April, 1965, until December, 1966, aggravated the documented underlying coronary artery disease, we cannot answer with certainty. This is a question that has plagued the most authoritative cardiologists and physicians, and there is at present conflicting evidence in medical circles and medical literature as to the knowledge of tension in the genesis of coronary artery disease. Since we are unable to answer the question of whether or not the prolonged emotional tension aggravated or precipitated the episode of 12/15/66, we are similarly unable to answer the question of the duration of disability."

On this state of the record, it is our opinion that the findings and award of the Commission are reasonably supported by the evidence and the award will not be disturbed on appeal.

Award affirmed.

STEVENS and CAMERON, JJ., concur.