459 P.2d 104

James A. FYFFE, Petitioner,

v.

The **INDUSTRIAL COMMISSION** of Arizona, Respondent, Southwest Metal Industries, Division Jetronic Industries, Incorporated, Respondent Employer, State Compensation Fund, Respondent Carrier.

No. I CA–IC 213.

Court of Appeals of Arizona, Division 1. Department A.

Sept. 29, 1969.

Rehearing Denied Oct. 23, 1969. Review Denied Dec. 9, 1969.

Finn, Meadow & Thrasher by Herbert B. Finn and Robert Y. Thrasher, Phoenix, for petitioner.

**378**

Michael A. Lasher, Jr., Former Chief Counsel, Donald L. Cross, Chief Counsel, Phoenix, for respondent Industrial Commission.

Robert K. Park, Chief Counsel by Ronald M. Meitz, Phoenix, for respondent carrier State Compensation Fund.

DONOFRIO, Presiding Judge.

This case is before the Court by writ of certiorari to determine the lawfulness of an award and findings of the Industrial Commission issued May 29, 1968, finding that the petitioner suffered no disability attributable to his industrial episode of September 14, 1964.

On September 14, 1964, petitioner suffered a back strain while he and three other men were moving a large mold. His injury was diagnosed by a medical doctor as "an acute low back (right lumbar) strain." The patient was hospitalized by Dr. Ronald S. Haines in April 1965 for conservative care. A myelogram was performed and showed evidence of a disc protrusion. Surgery was authorized by the Commission but was postponed, first because petitioner's house burned, and later because it was discovered he had left the state. Compensation benefits were suspended during his absence from Arizona, which was approximately a year and a half. Upon his return he was seen by Dr. Haines in October 1966. Dr. Haines reported that the petitioner "probably does need surgery, but he is still reluctant to consent to have surgery." He was asked to make a decision with regard to surgery and report his decision to Dr. Haines within a week. He did report, but at that time had influenza and was advised to return home until this cleared up. On November 15, 1966, Dr. Haines reported to the Commission:

"It was explained to him today that we felt that he should return to some form of work at this time—any kind of work that he can do. If this makes him worse, so that he develops further evidence of disability, perhaps hospitalization and disc removal might be necessary. We will not know what impairment of function he has, however, until he does return to some form of work. He was encouraged to try to find work, try it out and report if he has trouble."

The petitioner was seen by a group consultation board on January 3, 1967. The consultation board reported as follows:

"This patient appears to have evidence of disc protrusion, probably midline, but with greater involvement now on the left than on the right lower extremity. He is still reluctant to consider surgery as he feels that he is improving. He brought with him a form from the unemployment compensation permitting him to return to work. His attending physician filled this out for him stating that the patient could return to his regular work on a trial basis. If this results in increased evidence of disability, he should have appropriate surgery. Perhaps by this means, the patient will convince himself that surgery is necessary.

"The patient's condition is not stationary and further observation at regular intervals is indicated. If the patient does not improve spontaneously, surgical exploration and possibly spine fusion is indicated."

On April 7, 1967, Dr. Haines wrote a letter to the Commission explaining that in his opinion the petitioner did have a disc protrusion aggravated by the injury, which would probably manifest itself again as soon as he returned to strenuous work. He recommended that petitioner should not be given compensation at that time as "when last seen he was able to do regular work."

A formal hearing was held in October of 1967, at which time petitioner testified as follows:

"Q Now, today, Mr. Fyffe, are you still troubled with your back?

"A Not too much, no. Once in a while if I lift something real heavy it hurts me, but other than that, it is all right."

The petitioner also testified that he had sought employment but was unsuccessful

in his attempts. On cross-examination petitioner testified:

"Q Now you have been told, have you not, by Dr. Haines that you should have surgery?

"A Yes.

"Q Why haven't you had surgery?

"A Because I don't think I need it. I think I get along better without it as old as I am."

The continued hearing was held on January 22, 1968, at which the attending physician, Dr. Haines, testified. On direct examination, he stated:

"Q In January, 1967, you indicated that his condition was not stationary, is that correct?

"A I think that is correct, let me check it. Yes, it was not stationary then.

"Q In the absence of surgery it was your feeling and you indicated it was not stationary. Wouldn't return to the kind of work that produced the disc, wouldn't it injure him further if he returned to that kind of work?

"A We thought it would be beneficial to him in that we would find out what he had and get his consent for surgery so we could take care of him. We strongly urged him to return to regular work.

"Q This would reinjure him, wouldn't it?

"A How did we know. It would either do nothing to him or perhaps his symptoms would come back, we wanted to find out what the man's condition was."

However, Dr. Haines continued:

"I saw him after that, after January, I saw him on April 17, 1967, by which time all of his physical signs had disappeared. He had nothing then of consequence to show or indicate that anything was wrong."

After reading at length from Campbell's Operative Orthopedics, Fourth Edition, 1953, regarding conservative treatment of disc problems, petitioner's counsel asked:

"Q Isn't it fair to say this man should have been continued on some sort of conservative treatment rather than discharged?

"A No, that is entirely wrong. When I discharged him finally the man had no physical findings whatsoever. He stated to me he was perfectly able to work and wanted to work. One cannot keep a patient on conservative treatment forever. This man had been on conservative treatment off and on for approximately two years, off and on. Now it was explained to the patient that if his condition should become worse so he would be unable to work he was supposed to contact me so I could reexamine him. Then I could set up, if his symptoms were such and his signs were such, we could set up surgery and petition to reopen the case. This was all explained to him. There was no point in keeping his case open forever. When I saw him last he was perfectly normal, he had recovered from the disease, he had normal straight leg raising and normal motion, etc."

Where the result of accident for which workmen's compensation is claimed is of such a nature that it is not clearly apparent to an ordinary layman, the physical condition of the petitioner can usually be ascertained only by expert medical testimony. Potter v. Industrial Commission, 99 Ariz. 126, 407 P.2d 88 (1965). Dr. Haines was the only medical expert to testify at the formal hearing. His testimony was based upon his examination of the petitioner in April, 1967. The petitioner contends that his testimony is at variance with the report of the consultation board issued in January of the same year. Petitioner's counsel examined Dr. Haines:

"Q Isn't this most unusual where there is a definite diagnosis of disc pro-

trusion in January that this condition in '67, that this condition would spontaneously eliminate itself by April, 1967?

"A Not at all, it happens many many times."

And,

"Q Isn't it true that once you have had one of these disc protrusions you will never thoroughly recover from it?

"A No, that is not true. I have seen many discs recover one hundred percent without surgery and able to do their regular work."

The attending physician had examined the petitioner subsequent to the consultation board, and it was his firm opinion as indicated by the quotations from the transcript that the petitioner had made a spontaneous recovery. Even if there had been a conflict, and it is the opinion of this Court that there was not because of the time lapse, the Court of Appeals will not substitute its opinion for that of the Industrial Commission where the Commission has resolved a conflict in medical testimony. Wones v. Industrial Commission, 7 Ariz.App. 236, 437 P.2d 988 (1968).

█ This case is clearly distinguishable from Garrard v. Industrial Commission, 6 Ariz.App. 373, 432 P.2d 921 (1967), in that the medical testimony in the instant case indicates that the petitioner had made a *spontaneous recovery* from his disc involvement, and that no treatment was indicated or needed until and unless there was a possible future reinjury or recurrence, which was merely a speculative possibility.

It is the opinion of this Court that the award and findings of the Industrial Commission are reasonably supported by the evidence.

Award affirmed.

STEVENS and CAMERON, JJ., concur.