461 P.2d 181

Beatrice O. ROMERO, Widow, Arthur M. Romero, Minor Child, Petitioners, in the Matter of Dionicio B. Romero, Deceased,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,
Wallapai Brick and Clay Products Company, Respondent Employer,
State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 266.

Court of Appeals of Arizona, Division 1.

Department A.

Nov. 24, 1969.

Gorey & Ely by H. L. Ely, Phoenix, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, for respondent Industrial Commission of Arizona.

Robert K. Park, Chief Counsel by R. Kent Klein, Phoenix, for respondent Carrier State Compensation Fund.

DONOFRIO, Presiding Judge.

This case is before the Court by writ of certiorari to review the lawfulness of an award and findings of the Industrial Commission of Arizona issued February 21, 1969, denying the petitioner's petition for hearing, and affirming the previous award of August 13, 1968, denying widow's and dependent's claim for death benefits.

The deceased was fifty-seven years of age at the time of his death. He had worked approximately seventeen years on this particular job and had not been under the

care of any doctor until about eleven months prior to his death, which occurred on Wednesday, March 10, 1965. He had gone home from work on the previous Thursday afternoon, March 4, 1965. When he went home he was tired and complained of chest pains. That night he had headaches and difficulty in breathing. He had similar pains Friday, Saturday, Monday and Tuesday, remained at home between Thursday and the fatal Wednesday because he felt ill, and left for work at 6:00 a. m. on the day of death. On that day he complained to a fellow employee, Mike Fuentes, of chest pains and that he did not feel well. His job a few minutes prior to his fatal attack consisted of straightening up canvas used to cover a brick kiln, and putting rails and pipe against it to keep it from flopping. The pipe weighed from thirty to fifty pounds, and the rails from twenty-five to thirty pounds. Decedent's job was on the ground next to the kiln, some sixteen feet below where his co-worker, Fuentes, was helping to perform the work at hand. The work on the fatal day, which prior to the last-described task consisted mainly of picking up bricks weighing five pounds and less and throwing the bad ones into a truck, was not the decedent's regular job; he had been doing that work for about a week. Ordinarily he worked as a shovel operator, loading and dumping trucks with clay used in brickmaking. Immediately preceding the fatal attack he had stopped momentarily to greet a visitor. His co-worker testified that he then observed the decedent make a half turn as though he were going to sit down, but could not make it, and fell instead. Some foreign matter, plus blood, came from his mouth, but the co-worker did not know exactly what it was. The decedent appeared to the co-worker to die a short time later, and was pronounced dead on arrival at St. Joseph's Hospital in Phoenix. The death certificate, listing the cause of death as arteriosclerotic heart disease, was signed by Dr. Thomas Jarvis who on the date of decedent's death was chief assistant medical examiner for Maricopa County.

Petitioner herein has the burden of proof in proceedings before the Industrial Commission to show that the conditions of decedent's employment bore a causal relationship to his death from arteriosclerotic heart disease. Jones v. Industrial Commission, 9 Ariz.App. 543, 454 P.2d 591 (1969). Where the result of an accident for which workmen's compensation is claimed is of such a nature that it is not clearly apparent to an ordinary layman, this must be established by expert medical testimony. Fyffe v. Industrial Commission, 10 Ariz.App. 377, 459 P.2d 104 (1969). We stated in Linn v. Industrial Commission, 10 Ariz.App. 571, 460 P. 2d 677 (Filed November 10, 1969):

> " 'Heart cases' are difficult cases. The activity of the workman need not be 'unusual' in relation to his employment or in relation to the manner of the performance of his employment. 'Heart cases' are resolved based upon the medical testimony as to the causal relationship between the events and the 'heart failure', another broad use of the term. (citations omitted) * * *."

In those claims where there is a conflict in the medical testimony the Industrial Commission has the responsibility of resolving the conflict. However, we have stated that the Commission is not allowed to substitute its judgment on matters lying exclusively within the field of medical science. When the causal relationship between the accident and the injury is necessarily within the singular knowledge of medical experts, their findings as expressed are conclusive upon the Commission. Sandoval v. Industrial Commission, 3 Ariz.App. 449, 415 P.2d 463 (1966).

In the instant case Dr. Jarvis was the only physician who testified at the formal hearing. After proper foundation had been laid, he testified as follows:

> "A This opinion is that the continued activity, continued work of this subject contributed, in all probability, to his death at that time.

"Q Would you tell us why you have come to that opinion?

"A This opinion, this specific opinion is based not upon the facts but assuming the facts and upon general knowledge of coronary artery disease and myocardial diseases in general. And it is a widely accepted concept that the onset of symptoms suggestive of this disease require, first of all, rest in terms of treatment for the reason that continued activity continues to place a burden upon an obviously damaged heart and contributes to further injury, and not infrequently, to death.

So that the opinion itself is based on these general considerations rather than on the circumstances previously related.

"Q You have taken into account the hypothetical facts in coming to your opinion?

"A Yes.

"Q And that he apparently, relying on the basis of the hypothetical facts, he had some injury before he ever went to work Wednesday morning?

"A I expressed that opinion previously in answer to a question and everything I am saying is based on that assumption. These symptoms were consistent with coronary artery disease and he did in fact have coronary artery disease and he did continue to exert himself and this continued exertion contributed to his death at that time."

Dr. Jarvis also stated:

" * * * I believe the work he was doing—not exclusively, * * * but in view of the fact that he was doing that work did contribute to his death."

And,

" * * * and I haven't changed my opinion—that the probabilities are: Had he not been engaged in exertion, had he been medically treated and at rest, that he would not have died at that time, and I haven't changed that opinion * * *."

It is the opinion of this Court that in this particular "heart case", the award and findings of the Industrial Commission denying death benefits to the widow and minor child must be set aside, as it finds no reasonable support in the evidence. The only medical testimony before the Commission clearly indicated that the doctor felt that the exertion of the employment contributed to and accelerated the time of decedent's death. An industrial injury need not be the sole cause, as long as it appears that the injury contributed to and accelerated the inevitable. The injury need not be the sole cause of disability (or death) if it is a producing cause. Tatman v. Provincial Homes, 94 Ariz. 165, 382 P.2d 573 (1963); Revles v. Industrial Commission of Arizona, 88 Ariz. 67, 352 P.2d 759 (1960).

Award set aside.

STEVENS and CAMERON, JJ., concur.