461 P.2d 694

Aretha I. NORRIS, Petitioner,

v.

INDUSTRIAL COMMISSION of Arizona, Respondent,

Frank R. Warren (Warren Properties), Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. I CA–IC 291.

Court of Appeals of Arizona, Division 1.

Department A.

Dec. 3, 1969.

Rehearing Denied Jan. 8, 1970.

Review Denied Feb. 17, 1970.

Spencer K. Johnston, Phoenix, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, for respondent Industrial Commission of Arizona.

Robert K. Park, Chief Counsel, by Courtney L. Varner, Phoenix, for respondent State Compensation Fund.

DONOFRIO, Presiding Judge.

This case is before the Court by writ of certiorari to review the lawfulness of an award and findings of The Industrial Commission of Arizona issued on April 9, 1969, finding that the petitioner suffered no permanent disability as the result of an industrial accident suffered by her on August 7, 1967.

At the time of the accident the petitioner was working as a maid with Warren Properties. She was turning a mattress when she fell backward and landed on a coffee table with the mattress on top of her. She continued to work for approximately three hours that day, but the following day was seen by her attending physician, Dr. Joseph J. Sobotka, and was given conservative treatment. On the night of August 8, 1967 her symptoms became more severe and she reported to the Memorial Hospital emergency room for an injection to relieve the pain. On the following day she was admitted to the hospital and was treated with conservative management consisting of bed rest, pelvic traction, and appropriate sedation. She was seen in consultation by Dr. S. L. Stovall, an orthopedic specialist, and eventually her care was transferred exclusively to him. On December, 6, 1967, the Commission entered a Findings and Award for Continuing Benefits and Establishing Average Monthly Wage. This Award was timely protested by petitioner, alleging that her average monthly wage had been set too low. Petitioner continued to be seen by Dr. Stovall, and in his report dated December 11, 1967, the doctor reported that the claimant's condition was not stationary, however he felt she was able to perform her regular work as of December 1, 1967. On February 20, 1968, Dr. Stovall discharged the petitioner with a "no disability" finding.

The presiding referee, John von Blum, had corresponded with petitioner's attorney in an attempt to obviate the time and expense of a formal hearing on the issue of average monthly wage by requesting information which would show the wages to be more than $54.00 a week. Receiving no response from the attorney, he recommended to the Commission that the petition for hearing be denied without benefit of any formal hearing.

Before the Commission acted upon the recommendation of the referee, it received

a further report from Dr. Stovall who stated:

"Orthopedic examination of the back reveals marked increase in her normal lumbar lordosis. All movements are carried out slowly and caustiously, (sic) but full ranges of motion are obtainable in both the back and neck. To palpitation she has some generalized muscle tenderness of the posterior cervical as well as lumbar muscles. Most of the tenderness seems to be in the region of L-5 and S-1 interspaces. Straight leg raising with the patient in the sitting position is 90/90 and in the supine position 45/45. No neurological deficit is present at this time.

"X rays were not made at this time.

"COMMENTS:

"I am still of the opinion that Mrs. Norris sustained a lumbosacral sprain as a result of the accident in question. I am unable to relate her present neck symptoms to that accident, but she feels that there is a relationship. She does have some muscle tenderness with back movements carried out in a slow and cautious manner. There is a possibility that the patient may have some residuals which may require an occasional pain pill. If the case is reopened, I suggest that she have medical consultation and group consultation as well."

At the time this report was submitted the procedural posture of the petitioner's claim was such that it had remained open and there was no question, as Dr. Stovall seemed to think, of "reopening" it for accident benefits. These benefits could have been given because the claim remained open, no action having been taken on the petitioner's petition for hearing.

█ Just prior to the examination and report of Dr. Stovall the petitioner was examined by another orthopedic specialist, Dr. Melvin Goldsmith, on April 25, 1968. Dr. Goldsmith's report was not presented to the Commission until the date of the formal hearing, on February 10, 1969. There is some question as to just how the report was to be considered. Relevant on this point is the following from the hearing:

"THE REFEREE: In other words, this purports to be a letter from Dr. Goldsmith to Dr. Dinin?

"MR. GOREY: Yes, dated quite awhile ago. I didn't know it existed until Friday.

"MR. VARNER: I don't have any objection it be admitted to the file reserving any other rights we would have for cross-examination that we deem necessary.

"THE REFEREE: I believe, Mr. Gorey, that would be the appropriate procedure to accept it in the file, rather than consider it in evidence."

At the close of the hearing the referee also stated:

"THE REFEREE: There being nothing further before The Industrial Commission, this matter will be deemed submitted, subject to the right of the Commission to have additional hearings or examinations as they may be deemed necessary."

Since the report was admitted to the Commission file without objection by counsel for the Commission subject to the right of cross-examination, under Commission Rule No. 29 we would hold that the truth and correctness of this document is deemed admitted by the Commission. This Rule reads:

"The files of the Commission will be open for inspection by all parties to the proceeding only, and they are deemed to have notice of all reports and other documents filed therein. Every party is deemed to admit the truth and correctness of every material fact or statement contained in any report or document on file, unless a written objection to or denial of such fact or facts be made and filed with the Commission."

The report of Dr. Goldsmith is to be considered a part of the record. The report stated:

"* * * X-rays of her lumbar spine were obtained and other than the above noted lumbar lordosis on clinical examination are completely within normal limits.

"COMMENTS: I would consider her a candidate for a lumbrosacral corset, William's flexion exercises to obviate the lumbar lordosis. Should she fail to progress, she may be considered for a trial of bed rest in the hospital, with such additional procedures to follow as indicated.

"Thank you for the referral of this patient, and please keep me informed of her progress."

 The Commission urges that the law is that whether or not the petitioner has any residual disability resulting from the industrial accident is essentially a medical question to be answered by expert medical testimony. It is not a question which can be solved by the ordinary layman unless, of course, the result of the accident is one which is clearly apparent, i. e., the loss of a limb, etc. Lowry v. Industrial Commission, 92 Ariz. 222, 375 P.2d 572 (1962); Bedel v. Industrial Commission, 5 Ariz. App. 470, 428 P.2d 134 (1967). With this we agree. As we stated in Romero v. Industrial Commission, 11 Ariz.App. 5, 461 P.2d 181 (Filed November 24, 1969):

"In those claims where there is a conflict in the medical testimony the Industrial Commission has the responsibility of resolving the conflict. However, we have stated that the Commission is not allowed to substitute its judgment on matters lying exclusively within the field of medical science. When the causal relationship between the accident and the injury is necessarily within the singular knowledge of medical experts, their findings as expressed are conclusive upon the Commission. Sandoval v. Industrial Commission, 3 Ariz.App. 449, 415 P.2d 463 (1966)."

In the instant case, the two most recent medical opinions before the Commission were expressed in the reports submitted by Dr. Stovall and by Dr. Goldsmith. The clear import of those reports is that in their opinion the petitioner's condition needed more evaluation and more medical treatment. As we have stated, at this point in the processing of the claim it was not necessary for petitioner to show a new, additional, or previously undiscovered disability. The claim has remained open and her burden of proof was only to show that she continued to need medical treatment. This she has done. In the opinion of the Court, the award of the Industrial Commission is not reasonably supported by the evidence, and for this reason it must be set aside. Belshe v. Industrial Commission, 98 Ariz. 297, 404 P.2d 91 (1965).

Award set aside.

STEVENS and CAMERON, JJ., concur.