NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

AMERICAN WOODMARK CORPORATION, *Petitioner Employer*,

XL SPECIALTY INSURANCE CO., *Petitioner Carrier*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

GUADALUPE ARIAS, *Respondent Employee*.

No. 1 CA-IC 13-0031
FILED 03/11/2014

Special Action - Industrial Commission
ICA NO. 20113-550084
Carrier Claim No. 186271680

Paula R. Eaton, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Lester & Norton, P.C., Phoenix
By Christopher S. Norton

*Counsel for Petitioners Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade

*Counsel for Respondent*

Taylor and Associates, PLLC, Phoenix
By Thomas C. Whitley

*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Peter B. Swann joined.

---

**T H O M P S O N,** Judge:

¶1 This is a special action review of an Industrial Commission of Arizona (ICA) award and decision upon review for a compensable industrial injury. Three issues are presented on appeal:

(1) whether the administrative law judge (ALJ) had jurisdiction over the respondent employee's (claimant's) December 5, 2011 injury claim;

(2) whether the ALJ made legally sufficient findings regarding the disputed date of injury; and

(3) whether the claimant met her burden of proving that she sustained a compensable industrial injury on December 5, 2011.

Because we find that the ALJ had jurisdiction over the December 5, 2011 injury claim and the claimant met her burden of proof for compensability, we affirm the award.

**JURISDICTION AND STANDARD OF REVIEW**

¶2 This court has jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(2) (2003), 23-951(A) (2012), and

2

Arizona Rule of Procedure for Special Actions 10 (2009).[1]  In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law de novo.  *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003).  We consider the evidence in a light most favorable to upholding the ALJ's award.  *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

## FACTUAL AND PROCEDURAL HISTORY

**¶3**　　　　The claimant worked as a packer for the petitioner employer, American Woodmark Corporation (American).  She filed a worker's report of injury on December 14, 2011.  The report stated in relevant part:

> **9. DATE OF INJURY (MO/DAY/YEAR):**  06/14/2011
> . . . .
> **17. STATE HOW ACCIDENT HAPPENED:** I've been doing same job for 15 years involving repetitive activities such lifting, folding, reaching (lifting arms), and pulling.
> . . . .
> **18. BODY PART INJURED:** Right Shoulder… Tearing of Supraspinatus
> . . . .
> **20: WHO TREATED YOU FOR THIS INJURY:   NAME:** Dr. Walter Song
>
> . . . .

The petitioner carrier, XL Specialty Insurance Company (Specialty) denied the claim for benefits noting, "No Record of Claim."  The claimant timely requested an ICA hearing, and the ALJ heard testimony from the claimant, her daughter, an American manager, and two physicians.

**¶4**　　　　Prior to the first hearing, the ALJ held a discussion on the record.

> JUDGE EATON: We'll go on the record. … We're here with
> regard to a Request for Hearing filed by applicant protesting
> a Notice of Claim Status issued on January 11, 2012, that

---

[1]  Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

denied the applicant's claim and indicated no record of the claim.

The applicant protested, as I said. Is that correct, Mr. Whitley?

MR. WHITLEY: It is, Your Honor. But for purposes of this matter and the case law I believe is clear is that the facts can be - - or the facts control the record, and we're actually going to amend the date of injury to be December.

JUDGE EATON: of 2011?

MR. WHITLEY: Yes. And we can explain why the original 407 was completed as it was, but we're not going to be making a claim for benefits for any incidents which occurred on or around June 14th but rather the December date when the reported injury was and the Employer's Report of Injury.

And just in brief summary, and again I will have applicant testify, but basically it's that there was this incident in June, but she had treatment, she got better, she continued to work, there was no time lost. So, from that standpoint, the actual date-of-injury claim we're going to amend to December 2011.

JUDGE EATON: And I see her claim form signed on December 14th says it's a repetitive injury; is that right?

MR. WHITLEY: It is. But there was an incident which occurred superimposed on the earliest incidents, but there was a specific incident which occurred, which we'll have the applicant testify to, in December.

JUDGE EATON: Okay. Mr. Norton, before we went on the record, you said that you were raising the affirmative defense of failure to forthwith report?

MR. NORTON: Yes.

JUDGE EATON: Just so I'm clear a little bit before we start, does that apply to both the June incident and the December incident?

MR. NORTON: I think it would because we would - -

JUDGE EATON: Okay. I mean, you're raising it for both?

MR. NORTON: We would be essentially disputing the date of injury and saying that it was manifest much earlier and should have been reported much earlier, regardless of the date that they actually pick and proceed on, so I guess we're in essence disputing the date of injury and asserting it was not timely reported.

(Emphasis added).

¶5        The claimant testified that she could not read or write English.[2] She had worked for American for fifteen years packing cabinets in cardboard boxes as they came off the line. Although the claimant could not recall an incident occurring in June 2011, she remembered "Jacey" sending her to Dr. Song for a shoulder injection.[3] Dr. Song obtained an MRI of the claimant's right shoulder, which revealed a "full thickness tearing of the anterior supraspinatus tendon." He prescribed six weeks of physical therapy.

Q. BY MR. WHITLEY: Did you tell the employer in June about your shoulder?

A. [Claimant] Yes.

Q. Who did you tell?

A. Amanda.

Q. Armando or Armanda?

A. Armanda.

Q. Okay. What did you tell them?

---

[2] One of the medical records also indicated that the claimant's appointment was scheduled with her daughter because the claimant spoke "broken" English.

[3] Certified nurse practitioner Jacey Mitchell-Huffman referred the claimant to Walter J. Song, M.D., in June 2011 for right thumb and right shoulder pain. Dr. Song recorded a "History of Present Illness" as work packing cabinets in a factory.

A. I told her I was going to therapy for my shoulder.

Q. Did you tell them that something happened at work?

A. Yes.

**¶6**         The claimant's daughter, Irene Di Carlo, corroborated her mother's testimony. She testified that the claimant gave Armanda Dr. Song's physical therapy prescription, and Armanda gave the claimant Family Medical Leave Act (FMLA) paperwork to excuse her from work to attend therapy. Ms. Di Carlo helped her mother complete the FMLA paperwork, and it was approved by American's human resources manager. The claimant testified that therapy improved her shoulder condition, and she continued to perform her regular work.

**¶7**         The claimant testified that another incident occurred on December 5, 2011, when she was helping load finished cabinets and plywood into a semi truck. She stated that she was carrying a piece of plywood to the truck when it fell, and she felt "very strong pain" in her back, right shoulder, and right arm. The claimant testified that the shoulder pain was in the same place as in June, but that it was much more severe.

**¶8**         On December 8, 2011, the claimant saw Dr. Thornton for chiropractic care and he gave her a twenty pound lifting limitation "for the next [two] weeks." On December 9, 2011, American completed an incident report for the December 5th injury. On December 13, 2011, the claimant went to see nurse Jacey and was placed in an off work status. Nurse Jacey referred the claimant to J. Kent Ferrari, M.D., for additional shoulder treatment. On December 14, 2011, American provided the claimant with additional FMLA paperwork. At that time, she asked about a workers' compensation claim. The claimant stated that she was told a FMLA claim could not also be a workers' compensation claim.

**¶9**         The ALJ then entered an award finding the claimant's December 5, 2011 industrial injury compensable. She specifically found the claimant credible and resolved any evidentiary conflicts in her favor and resolved the medical conflict in favor of Dr. Ferrari. Specialty timely requested administrative review and argued that the ALJ did not have jurisdiction over the December 5, 2011 industrial injury, because the claimant did not file a workers' compensation claim for that date. The ALJ supplemented and affirmed her award.

5. … [A]t hearing, the objection stated by defendants to the amending of the date of injury, was that they were, "disputing the date of injury and saying that it was manifest much earlier and should have been reported much earlier."

The defendants then proceeded to litigate the facts of both of these incidents, whether the applicant's physical complaints were caused by her June 2011 work activities, whether or not she had any injury at all in June or December 2011 and whether or not she forthwith reported either of these alleged injuries.

6. It would be inequitable to preclude the applicant's claim for a December 5, 2011, injury when the applicant clearly relied on the subject litigation to be a valid pursuit of this claim. Defendants never made clear that they were objecting to the amending of the date of injury or that they felt that the applicant needed to file a separate claim for the December 5, 2011 injury. The applicant made clear at the outset of the hearing in this matter that she was seeking benefits for a specific incident that occurred in December 2011. The defendants were provided the opportunity to conduct discovery of this incident . . . and presented medical evidence with regard to the compensability of this incident.

Specialty next brought this appeal.

## DISCUSSION

¶10 Specialty first argues that the ICA lacked jurisdiction to consider the claimant's December 5, 2011 injury claim because she did not file a claim for that injury date. It cites *Sun Control Tile v. Indus. Comm'n*, 117 Ariz. 268, 571 P.2d 1064 (App. 1977) and *Young v. Indus. Comm'n*, 19 Ariz. App. 304, 506 P.2d 1089 (1973). We find both of these cases factually distinguishable.

¶11 In *Young*, the claimant filed a petition to reopen his prior injury claim, his petition was denied, and he requested a hearing. 19 Ariz. App. at 305, 506 P.2d at 1090. At the hearing, the carrier's IME doctor testified that the claimant had no statutorily-recognized condition for reopening, but instead, he had a new injury. *Id.* The claimant then moved to amend his petition to reopen to allege a new injury claim. *Id.* at 305-06, 506 P.2d at 1090-91. The ALJ denied the motion, and on appeal, this court affirmed. *Id.* at 306, 506 P.2d at 1091. We found that the new

injury claim was the responsibility of a different insurance carrier and it had no notice of the petition to reopen proceedings. *Id.*

¶12 In *Sun Control*, the claimant sustained a compensable knee injury. 117 Ariz. at 269, 571 P.2d at 1075. It was found stationary, and he requested a hearing. *Id.* Before the hearing, the claimant fell from a ladder and allegedly injured his back. *Id.* At the hearing, the claimant agreed with the permanent impairment rating for his knee. *Id.* But he argued that his fall was the result of his injured knee, and therefore, his claim should remain open until his back injury became stationary. *Id.* The ALJ agreed, but on appeal, this court set aside the award. *Id.* at 269-70, 571 P.2d at 1075-76. We held that the carrier had no notice of a back injury nor that it would be the subject of the litigation on the knee closure. *Id.*

¶13 Arizona law requires an injured employee to report his accident and the injury resulting there from to the employer "forthwith." *See* A.R.S. § 23-908(E) (2011). The statute of limitations for a workers' compensation claim requires a claim to be filed "in writing within one year after the injury occurred or the right thereto accrued. The time for filing a compensation claim begins to run when the injury becomes manifest or when the claimant knows or in the exercise of reasonable diligence should know that he has sustained a compensable injury." *See* A.R.S. § 23-1061(A) (2011).

> For an injury to be serious and not slight or trivial, the symptoms must be of sufficient magnitude. . . . Awareness of the permanence of a condition is a factor when determining the magnitude of the injury.

*Pacific Fruit Express v. Indus. Comm'n*, 153 Ariz. 210, 214, 735 P.2d 820, 824 (1987) (citations omitted).

¶14 The credible evidence in this case established that in June 2011, the claimant felt right shoulder pain while performing her regular work at American. She sought and received conservative medical treatment, but she did not lose any time from work. She reported her injury and its work connection to her employer, and she was given FMLA paperwork. The claimant's shoulder improved, and she continued to perform her regular work as a packer until December 5, 2011.

¶15 On December 5th, the claimant's manager was testing her physical ability to perform a new job as a "packer/scanner/loader," when

she dropped a piece of plywood and sustained an injury to her neck, right shoulder, and right arm.[4] On December 8th, the claimant sought medical treatment. Since that time, she has been unable to return to work. On December 9th, American prepared an incident report for the December 5th injury. Despite the claimant's inquiry about a workers' compensation claim, American again provided FMLA paperwork.

¶16    Requiring forthwith notice to the employer serves two purposes.   First, it enables the employer to investigate the facts surrounding the injury as soon as possible so that reliable evidence can be preserved.   Second, it gives the employer the opportunity to provide immediate medical treatment so as to minimize the seriousness of the injury. *Magma Copper Co. v. Indus. Comm'n*, 139 Ariz. 38, 43, 676 P.2d 1096, 1101 (1983) (citing 3 A. Larson, *The Law of Workmen's Compensation* § 78.10) (1983).[5]

¶17    In this case, the credible evidence established that the claimant provided the employer with forthwith notice of the June 2011 incident when she gave Dr. Song's physical therapy prescription to her supervisor so that she could attend treatment during the workday.  With regard to the December 2011 incident, it was witnessed by a manager and an incident report was prepared. The claimant filed a worker's report of injury, with a June 14, 2011 date of injury, on December 14, 2011. At the initial ICA hearing on June 5, 2012, the claimant moved to amend the worker's report of injury to reflect a date of injury of December 5, 2011, well within the one year statute of limitations.

¶18    This court has recognized that ICA hearings are fundamentally different than the usual adversary proceedings because their purpose "remains the humanitarian and compassionate one of aiding and compensating the injured worker." *Gordon v. Indus. Comm'n,* 23 Ariz. App. 457, 460, 533 P.2d 1194, 1197 (1975).  In light of that purpose, the ALJ is not bound by the common law or statutory rules of evidence or by technical or formal rules of procedure and instead is charged with

---

[4] American was restructuring its job descriptions and packers were also going to be required to scan and load products. For that reason, manager Joey Matthews witnessed the incident because he was observing the claimant to see if she could perform these additional duties.

[5] This section currently is found at 7 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law*, § 126.01 at 126-4 to -6.1 (2013).

conducting the hearings in a manner that will achieve substantial justice. *See* A.R.S. § 23-941(F) (2011).

**¶19**        Although a discussion ensued on the record, no one suggested that claimant needed to file a new claim form to reflect the amended date of injury. The parties litigated the claim and adduced evidence regarding both the June and December incidents. Specialty did not request a continued hearing. *See* Arizona Administrative Code (A.A.C.) R20-5-156.A (2013).  For these reasons, we believe that the ALJ had jurisdiction to consider the December 5, 2011 date of injury.

**¶20**        Specialty next argues that the ALJ failed to make sufficient findings to resolve the conflict as to the date of injury.  In the award, the ALJ specifically found the claimant credible, resolved all evidentiary conflicts in her favor, and adopted Dr. Ferrari's opinion. She  found:

> 12. Based upon the applicant's testimony and the testimony of Dr. Ferrari, I find that the applicant sustained a compensable industrial injury on December 5, 2011 to her right shoulder.

On administrative review, the ALJ recognized that "[t]he applicant made it clear at the outset of the hearing in this matter that she was seeking benefits for a specific incident that occurred in December 2011."  We conclude that these findings are sufficient.

**¶21**        Specialty last argues that the claimant failed to establish all of the elements of a compensable claim. The statutory elements of compensability are an injury by accident arising out of and in the course of employment.  *See* A.R.S. § 23-1021(A) (2011).[6]  It is the claimant's burden to prove all elements of a compensable claim.  *Toto v. Indus. Comm'n*, 144 Ariz. 508, 512, 698 P.2d 753, 757 (App. 1985).  Unless the industrial injury immediately causes injuries that are obvious to a layman, expert medical evidence is required to establish a causal relationship

---

[6] Arizona has recognized that a gradual injury can be an accident within the meaning of this statute. *Reilly v. Indus. Comm'n*, 1 Ariz. App. 12, 15, 398 P.2d 920, 923 (1965).   In the case of a gradual injury, the date of injury is considered to be the date that the claimant discovered or "in the exercise of reasonable diligence" should have discovered the relationship between the injury and the employment. *Nelson v. Indus. Comm'n*, 120 Ariz. 278, 281-82, 585 P.2d 887, 890-91 (App. 1978).

between the industrial injury and its alleged consequences. *Western Bonded Prod. v. Indus. Comm'n*, 132 Ariz. 526, 527-28, 647 P.2d 657, 658-59 (App. 1982).

¶22     In this case, the ALJ found the claimant's description of her December 5, 2011 injury credible. This testimony formed the foundation for her treating physician's opinion. Dr. Ferrari received a history of the claimant's June and December 2011 right shoulder incidents, and he reviewed her medical records and diagnostic tests. In May 2012, he operated to repair the claimant's right rotator cuff tear. It was his opinion that both the June and December incidents contributed to the need for surgery. *See Romero v. Indus. Comm'n*, 11 Ariz. App. 5, 7, 461 P.2d 181, 183 (1969) (the industrial injury need not be the sole cause of the claimant's injury so long as it is a contributing cause). We find that the claimant met her burden of proof.

¶23     For all of the foregoing reasons, we affirm the award.



Ruth A. Willingham · Clerk of the Court
FILED: gsh