484 P.2d 650

**Victor F. LEMIRE, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Arizona Highway Patrol, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 367.**

Court of Appeals of Arizona, Division 1, Department B.

May 13, 1971.

Rehearing Denied June 16, 1971.
Review Denied Sept. 21, 1971.

Gorey & Ely, by Joseph M. Bettini, Phoenix, for petitioner.

William C. Wahl, Jr., Counsel, Phoenix, for respondent, The Industrial Commission.

Robert K. Park, Chief Counsel, Phoenix, for respondent carrier, State Compensation Fund.

**498**

HAIRE, Judge.

The sole question presented to the Court for determination is whether there was reasonable evidence to support the finding of the Industrial Commission that petitioner's neuropathic condition was not causally related to, nor aggravated by, his industrial accident.

Petitioner sustained injuries to his right ankle, ribs and hand when he fell from the top of a fourteen foot cyclone fence while pursuing his duties as a reserve highway patrolman. Shortly thereafter, petitioner began experiencing pain and other symptoms in his feet which suggested a neuropathic disorder. He thereupon consulted Dr. Richard Thompson, a neurologist, whose examination of petitioner disclosed evidence of peripheral neuropathy.[1] During the ensuing Commission hearings, petitioner contended that his fall had either contributed to or aggravated this condition. By Findings and Award for Temporary Disability issued March 3, 1969 and Decision on Rehearing dated October 22, 1969, the Commission allowed benefits and compensation with respect to the ankle, ribs and hand injuries petitioner sustained, but found that petitioner's industrial accident bore no relation to his peripheral neuropathy.

 Our review of the record discloses ample evidence in support of the Commission's finding. In arriving at this conclusion, we need only refer to Dr. Thompson's opinion contained in the Group Consultation Report submitted to the Commission, in which he stated:

" * * * I cannot believe that his [neuropathic] symptoms are secondary to injury of any sort.",

and to his testimony to the same effect given at the rehearing:

"Q. At the time of the group consultation and since then have you drawn any conclusion as to the condition of the claimant?

"A. Yes, sir, I felt that he had what I would describe as a peripheral neuropathy. *I though it was due to a combination probably of excessive alcoholic intake for that individual and possibly a combination of poor nutrition for which I had no evidence, but this is often a part of the problem.*" (Emphasis supplied).

At most, the medical evidence concerning the origin of petitioner's neuropathic condition was conflicting, and the Commission was well justified in determining that the accident bore no causal relation to the neuropathy. Likewise, there was no competent medical evidence supporting petitioner's alternate contention that the trauma of his industrial accident made him symptomatically aware of his theretofore asymptomatic peripheral neuropathy, through a process described by Dr. Thompson in answer to a hypothetical question as "association". We have repeatedly held that where the disputed relation between an industrially-related accident and an alleged disability is peculiarly within the knowledge of the medical profession, this Court will not disturb the factual determination made by the Commission when such a determination is based upon conflicting medical opinion. Kreger v. Industrial Commission, 14 Ariz.App. 359, 483 P.2d 591 (1971); Peret v. Industrial Commission, 13 Ariz.App. 115, 474 P.2d 474 (1970); Zaragoza v. Industrial Commission, 8 Ariz.App. 236, 445 P.2d 184 (1968).

The award is affirmed.

JACOBSON, P. J., and EUBANK, J., concur.

---

1. A functional disturbance or pathological change in the peripheral nervous system.