485 P.2d 1

**Strauder O'NEAL, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of
Arizona, Respondent,**

**Clair S. Ornburg, Respondent Employer,**

**State Compensation Fund, Respond-
ent Carrier.**

**No. 1 CA–IC 503.**

Court of Appeals of Arizona,
Division 1,
Department B.

May 25, 1971.

Rehearing Denied June 15, 1971.

Review Denied July 13, 1971.

Bernard I. Rabinovitz, Tucson, for peti-
tioner.

William C. Wahl, Jr., Chief Counsel,
Phoenix, for respondent The Industrial
Commission of Arizona.

Robert K. Park, Chief Counsel, by Dee-
Dee Samet, Phoenix, for respondent Car-
rier, State Compensation Fund.

EUBANK, Judge.

We are asked to review by our writ of
certiorari the lawfulness of an award and
finding of The Industrial Commission of
Arizona which denied petitioner's claim for
compensation which arose from a my-
ocardial infarction (heart attack).

This claim is related to a prior one that
has been before us on review. O'Neal v.
Industrial Commission, 13 Ariz.App. 550,
479 P.2d 427 (1971). The first O'Neal
case was based on petitioner's first heart
attack which occurred on July 19, 1967.
The award, that it was a non-compensable
claim, was affirmed by this Court.

The present claim arose from a second
heart attack which occurred on March 27,
1968. The circumstances were as follows:
On February 23, 1968, the petitioner ap-
peared before the Commission's Cardiovas-
cular Advisory Board in Phoenix for ex-
amination. It was their recommendation
that he return to full-time employment per-
forming light carpentry work. His em-
ployer requested that he perform two jobs
for him on March 19, 1968. The first con-
sisted of changing a lock on a front door
and the second involved installing a seeing-
eye in a front door and fixing a glass patio
door that was not rolling free. While
working on this latter project it began to
rain and the petitioner went out in it to cov-
er up the tools. The next day he had the
flu. He went to bed and remained there
until March 27, 1968 when he sustained his
second heart attack.

It is petitioner's contention that under
existing law his attack of the flu was an
industrial accident and that, in this case,

the flu caused the second heart attack experienced by the petitioner on March 27, and that therefore the heart attack is compensable. Both sides agree that petitioner had the flu. The only substantial issue tried at the formal hearing involved the medical causation issue—whether or not the flu caused the second heart attack. Three well-qualified doctors testified at the hearing, two testified that the causal relationship existed and one testified that it did not.

Dr. Mayer Hyman testified that neither the work on March 19, nor the flu, caused the petitioner's heart attack on March 27. He did admit that if petitioner had a severe case of flu that it could aggravate his preexisting heart condition. He defined severe as "unusual", wherein someone has an extremely prolonged high fever, doesn't get enough fluids and is completely prostrate. The record does not reflect that the flu experienced by the petitioner was severe or unusual under this definition.

Dr. Nathan S. Kolins testified that he became petitioner's attending physician several months after his first heart attack, and that he had disagreed with the recommendation of the Cardiovascular Board that the petitioner return to work. It was his opinion that the flu placed a strain on the heart and that the strain had caused the second heart attack. He was not of the opinion that the work caused the heart attack, and, in answer to a question whether flu causes myocardial infarction, he answered:

"We don't really know what the cause is, myocardial infarction. Or coronary thrombosis. So I would find it difficult to say that as a cause and effect relationship."

He did disagree with the medical opinion of Dr. Hyman, and remained firm in his opinion that the flu caused the second heart attack.

Finally, Dr. Lee I. Schocket testified that the petitioner's flu caused increased demand on the heart muscle for oxygen, that the anterior descending artery was capable of only supplying a certain fixed amount, only enough for basal demand, and was not capable of increasing the supply for the period of a week, and that tissue damage, or infarction resulted.

Petitioner contends that there is no conflict in the medical evidence in that Dr. Hyman's opinion is based upon insufficient medical facts. One such insufficient fact deals with a coronary cineangiogram performed by Dr. Schocket. Petitioner contends that Dr. Hyman had no knowledge that such a diagnostic test was performed. The record does not support this argument. On cross-examination by petitioner's counsel, Dr. Hyman directly testified regarding the angiogram and was cross-examined concerning it. He testified,

"Well, of course the angiogram as I recall showed complete occlusion of the anterior descending branch. And we don't know when that occurred. It's possible that it could have had a portion of this occluded in the past, which may have been enough to have given him the first occlusion—first infarction.

"He may have had additional infarction later on. But he just had one angiogram and this was after both attacks. So I don't see how you can possibly say which or how much contributed to each heart attack."

This is followed by additional questions and answers relating to it.

The foregoing, however, does raise another contention of the petitioner, and that is that the angiogram did not show a com-

plete occlusion of the coronary artery, as stated by Dr. Hyman, but shows a narrowing of the artery resulting in coronary insufficiency as stated by Dr. Schocket. The record shows that irrespective of which condition prevailed, the effect was the same—myocardial infarction (death of a portion of the heart muscle). Assuming petitioner's observation is true, we fail to see how it affects the medical opinions one way or the other. The central medical issue deals with the question of whether or not flu can cause a myocardial infarction, not whether the blockage of an artery is complete or partial. If this contention of petitioner was the critical point at the hearing, the record fails to reveal that petitioner proved it to be such as a part of his burden of proof. We have read petitioner's cited cases of Hemphill v. Industrial Commission, 91 Ariz. 322, 372 P.2d 327 (1962); Belshe v. Industrial Commission, 98 Ariz. 297, 404 P.2d 91 (1965); Russell v. Industrial Commission, 98 Ariz. 138, 402 P.2d 561 (1965), and find them inapplicable. The case, Waller v. Industrial Commission, 99 Ariz. 15, 406 P.2d 197 (1965), cited by petitioner, is applicable in that it cites the rule that a causal connection between an accident and injury not clearly apparent to a layman can usually only be determined by expert medical evidence. This is exactly the type of expert testimony introduced at the hearing in this matter.

In our opinion there is a conflict in the expert medical testimony and in such cases we will not disturb the factual determination made by the Commission. See our recent case of Lemire v. Industrial Commission, 14 Ariz.App. 497, 484 P.2d 650 (1971).

The award is affirmed.

JACOBSON, P. J., and HAIRE, J., concur.