306 P.2d 285

Sophia GRONOWSKI, widow, Robert Gronowski and Carolyn Gronowski, minor children, Petitioners,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, defendant insurance carrier; and Ernest E. Chambers d/b/a Chambers Transfer & Storage Company, defendant employer, Respondents.

No. 6146.

Supreme Court of Arizona.

Jan. 29, 1957.

R. R. Woodford, Phoenix, for petitioners.

John F. Mills, Phoenix, for respondent Industrial Commission of Arizona; John R. Franks, Donald J. Morgan and Robert K. Park, Phoenix, of counsel.

WINDES, Justice.

John Gronowski departed this life while on duty as an employee of Ernest E. Chambers dba Chambers Transfer & Storage Company. He left surviving a widow and two minor children. Claim for death benefits under the workmen's compensation act was filed. The Industrial Commission of Arizona, after rehearing, ultimately found that the decedent died as a direct result of myocardial infarction attributable solely to a pre-existing disease with no causal connection with his employment and death did not arise out of his employment and entered an award denying death benefits. Upon petition by the dependents we issued certiorari to test the validity of the award.

Undisputed facts are that decedent was 38 years of age and had been working for the company for two or three years. He worked as a helper on a delivery truck and on the day of his death, he and witness Alva Murphree had delivered a fair-sized load of household furniture including a refrigerator and deep freeze. After completing the delivery Murphree remained in the house for a few minutes while decedent was outside standing beside the truck. When Murphree came out four or five minutes later he found decedent collapsed by the truck. He died soon thereafter. Murphree testified he never heard of decedent complaining about his physical condition except once about a year previous when decedent told him he had been to the doctor for gas on his upper stomach. This witness further testified that the refrigerator was a little heavy but was moved with a dolly; that he did not remember that deceased was subjected to unusual strain; and that he never complained of muscle strain from his work. The medical evidence established that the cause of death was myocardial infarction (injury to muscle tissue of the heart).

The only question presented is whether the evidence is such that the law will not

permit the commission to find that the myocardial infarction from which decedent died was attributable solely to a pre-existing coronary disease and there was no causal relationship with his employment. Two doctors testified concerning the question of causal connection. Dr. James D. Barger, who performed an autopsy, testified that decedent had a marked arteriosclerosis with marked diminution in the size of the lumen (the space in the artery) and that this was the cause of the infarction. In response to hypothetical questions, which assumed strenuous exercise immediately prior to the acute incidence, as to whether it was probable his labor was a precipitating cause of death the doctor said:

"A. I could say it is possible. I would hate to say that it is probable because I don't know enough of the circumstances, but it is possible that that could happen.

"Q. Doctor, we realize that you were not there and in fact none of us were, but of course it is possible, as you told me before, for a man to get up out of a chair and possibly have one of these? A. Oh, yes.

"Q. Or just be sitting there and have one? A. Yes."

\*    \*    \*    \*    \*    \*

"A. Well, you want to say that this (the work) is the precipitating cause, and I say that it is possible and maybe even probable that it is the precipitating cause of the acute episode.

"Q. That is the only thing we are here to determine, Doctor. A. Yes, it is possible and probable that it could be the precipitating cause of the acute episode."

At another time he said that it (the work) probably would cause it. The witness further testified:

"Q. Doctor, isn't it quite possible that Mr. Gronowski's death was produced or precipitated by the normal progression of the coronary disease? A. Oh yes, I think his normal progression of the coronary disease and actually at the time that he died he was hanging on a precipice waiting for the right thing to come along to push him over.

"Q. In other words, his employment may have had little or nothing to do with the precipitation of his death? A. Well, it might have had little or nothing to do with it."

Dr. Clarence Fabric when asked for some of the causes that would cause the arteries to close said that some of the common causes would be stress and strain of everyday life, nervous tension or heavy physical labor. He stated that high blood pressure would be another factor in causing and activitating a coronary condition of this type. When asked if this type of injury

was more common in men engaged in heavy muscular labor, the doctor said:

"A. I couldn't be specific about something like that except all I can speak for is my own experience in my fifteen years of practice I found it in both, heavy manual labor and also light *sedimentary* type work."

We have held that we would sustain the commission for allowing compensation when the medical evidence was to the effect that a death from heart failure was contributed to by the strain of decedent's labor immediately preceding death, Phelps Dodge Corp., Douglas Reduction Works v. Cabarga, 79 Ariz. 148, 285 P.2d 605; that we would sustain the commission in denying compensation when the evidence was susceptible of interpretation that the labors were not a contributing factor, Byers v. Industrial Commission, 80 Ariz. 406, 298 P.2d 1039; and that we would not sustain the commission in denying compensation when the only medical evidence was definitely to the effect that the exercise of decedent's labors contributed to his death, Jones v. Industrial Commission, 81 Ariz. 352, 306 P. 2d 277.

Petitioner contends that the Cabarga case is identical with the case at bar and since we ruled that the commission could allow compensation in that case, we should rule that we will compel compensation in this case. Such an argument is not impressive. On the same evidence we might well permit the commission to award compensation but not necessarily compel it to do so. For us to dictate that the commission must find a fact, the evidence must be such that there is but one possible inference to be drawn therefrom. In Jones v. Industrial Commission, supra, since the fact to be found (cause of death) was such that could be established only by medical evidence and that was definitely that the labor was a contributing cause, we ruled in effect that the commission without other evidence could not draw a contrary inference.

We have attempted heretofore to fairly set forth the important medical evidence on the question presented. Dr. Barger's testimony is impregnated with substantial uncertainty. It is apparent that he was reluctant to even say decedent's efforts, assuming them to have been strenuous, were probably the precipitating cause. The value of this statement is weakened when taken in connection with the testimony of decedent's co-worker who did not remember that decedent was subjected to any unusual strain. The doctor also said he would hate to say it was probable and that it might have had little or nothing to do with causing death. We think taking his testimony as a whole that it is susceptible of an interpretation that the doctor is speaking more of possibilities than probabilities. Cf. O'Brien v. Industrial Commission, 90 Utah 266, 61 P.2d 418. Clear-

ly, we cannot require the commission to find a fact on possibilities. Cross v. Industrial Commission, 81 Ariz. 222, 303 P.2d 710.

Under the foregoing analysis of the evidence, we feel that it carries such uncertainty that we would not be justified in requiring the commission to find there was a causal connection between decedent's death and his employment.

Award affirmed.

UDALL, C. J., and PHELPS, STRUCK-MEYER and LA PRADE, JJ., concur.