321 P.2d 1039

**Oden HUDGENS, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona and H. P. Adams, doing business as H. P. Adams Construction Company, Respondents.**

No. 6406.

Supreme Court of Arizona.

Feb. 26, 1958.

Brandt & Baker, Yuma, for petitioner.

Robert K. Park, Phoenix, John R. Franks, Donald J. Morgan, and James D.

Lester, Phoenix, of counsel, for respondent Industrial Commission.

PHELPS, Justice.

■ This is a review by certiorari of an award of the Industrial Commission which denied petitioner Oden Hudgens compensation for an injury on the ground that it did not arise out of and in the course of his employment. This court must herein determine whether petitioner sustained the burden of proving a causal connection between his employment and his injury in order to entitle him to compensation under the Workmen's Compensation Act, A.R.S. § 23–901 et seq.

On Friday, April 20, 1956, petitioner suffered a heart attack which his physician diagnosed as an acute coronary occlusion with myocardial infarction. On that day and the week preceding it petitioner worked alone as a carpenter to finish the construction of an office structure for the H. P. Adams Construction Company, his employer. Approximately three weeks later while petitioner recuperated in the hospital from the heart attack, he suffered a cerebral embolism which paralyzed his left arm and leg and affected his ability to speak such that he could not testify at the hearing before the Industrial Commission.

■■ In order to establish a compensable claim petitioner must sustain the burden of proving a recognizable causal connection between his employment and the accidental injury, or more specifically in a case such as this, he must sustain the burden of proving that the exertion of his job precipitated the heart attack. See Jones v. Industrial Commission, 81 Ariz. 352, 306 P.2d 277. This fact must be the only possible inference drawable from the evidence in order for us to set aside the award denying compensation. Gronowski v. Industrial Commission, 81 Ariz. 363, 306 P.2d 285. Thus we must scrutinize the evidence to determine whether it satisfies this requisite

■ Because petitioner was working alone, he alone knew what strenuous activity, if any, preceded the heart attack, but his condition made it impossible for him to testify concerning his activity preceding the attack. Thus he must rely upon circumstantial and hearsay evidence to sustain his burden of establishing that he engaged in strenuous activity prior to the heart attack. He may rely upon circumstantial evidence, Martin v. Industrial Commission, 73 Ariz. 401, 242 P.2d 286, and the Commission may properly admit hearsay evidence, Kelsey v. Industrial Commission, 79 Ariz. 191, 286 P.2d 195.

■ Dr. Williamson, the doctor who treated petitioner following the attack and the only medical witness before the Commission, testified as follows concerning a conversation with petitioner in the emer-

gency room of the hospital at about 4:30 in the afternoon of April 20, 1956:

"Q. Now, at that time did you interview him and take down a history of his life, medical history? Did you have any conversation with him in regard to his symptoms? A. Yes, inquiring as to what transpired, as to how the attack came on, where he was and what he was doing.

"Q. What did he say with that regard? A. He said he was working alone in this building and that he had been lifting some, I think he said, heavy door jambs and had just put one in place when he got this terrific pain in his chest.

"Q. Did he say what time of day that happened? A. Not exactly, no. I don't remember as to the time of day.

"Q. Did he say door jamb or door? A. To my knowledge it was something to do with door jambs. Whether it was specific doors or door jambs, I will not say, but to my knowledge I think he said door jambs.

"Q. To your knowledge he used the word 'heavy', is that correct? A. Yes.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Did he tell you that the pain occurred when he was on the job when you talked with him on the evening of April 20th? A. I didn't ask the specific question. I said, 'How did this come on?' He said, 'It was after I had lifted some heavy door jambs.' I didn't ask whether it was five minutes after or two hours or three hours or five hours after. I was aware of the fact only that the pain came on after he had lifted these heavy door jambs. I didn't ask him at the time. The thing I was interested in finding out was whether it happened after exertion or exposure to some gas or something like that.

"Q. Did he tell you when he first noticed the pain as to the time of day? A. Just as I have answered now. That he told me. I had no specific question as to a time because I asked him when this happened and his answer was 'after I lifted heavy door jambs.' He may have said 'heavy doors.' "

From this testimony we believe only one possible inference can be drawn: Shortly before petitioner felt the pain which he later associated with his heart attack he was lifting something to do with doors which he considered heavy.

The testimony of the employer's superintendent establishes that some time within the three or four days preceding the attack and the day of the attack petitioner hung four doors. When asked to estimate the weight of doors of this type, the

superintendent answered, "I'd say less than 75 pounds." His testimony established that hanging a door usually requires at least an hour of lifting, trimming and fitting and he termed "hanging doors" the hardest part of the finish work.

Petitioner's daughter testified that when petitioner arrived at her home at 4:15 on the afternoon of April 20th, she saw him staggering from his truck and pulling at his clothes. She said that when she got him on the couch he gasped for breath and told her that his stomach had started hurting before lunch, but that it passed and he felt all right after eating lunch; that after he began working again it started hurting again and he thought it would pass; that by the time his shift was over at the end of the day he really began to hurt and he gathered up his tools and drove home. His daughter immediately called an ambulance in which he was rushed to the hospital where Dr. Williamson met and treated him. According to Dr. Williamson's testimony, petitioner probably suffered a mild coronary spasm in the morning which relaxed, and the coronary occlusion which resulted in myocardial infarction probably occurred later in the afternoon.

The evidence established that petitioner had never before been seriously ill or complained of heart trouble. Dr. Williamson testified that petitioner's heart attack did not result from an arteriosclerotic con-dition because he had none of the classical symptoms of such a condition. In reference to the type of heart attack petitioner suffered, Dr. Williamson testified as follows:

"Q. Now, what exactly does heavy exercise have to do with this condition?

A. Heavy exercise, over exertion, can precipitate a heart attack.

* * * * * *

"Q. If the evidence discloses that Oden Hudgens was at or during the day on which this accident happened, lifting doors of an approximate weight of 75 pounds and putting them into place over a period of one hour, could that precipitate a heart attack?

"The Referee: You may answer the question.

"Mr. Baker: Which would necessitate lifting them into place and bending over to hinge them properly.

"A. I personally would feel that could be considered adequate physical exertion to be a precipitating factor, yes."

The evidence discloses that petitioner must have hung doors on the day of the heart attack. His statements to Dr. Williamson establish that he certainly placed door jambs on that day. Since doors cannot be hung until the door jambs are placed, and the doors were hung by petitioner before he left the job on the day

of the attack, petitioner must have hung some doors on that day.

Dr. Williamson's testimony clearly asserts the likelihood that petitioner's activity on the job precipitated the heart attack. The evidence leaves no other inference drawable therefrom. Petitioner sustained his burden of proof and the Commission offered no controverting evidence. Under the authority of Jones v. Industrial Commission, supra, the award must be set aside.

Award set aside.

UDALL, C. J., and WINDES, STRUCKMEYER, Jr., and JOHNSON, JJ., concurring.