402 P.2d 561

Dorothea RUSSELL, Petitioner,

v.

INDUSTRIAL COMMISSION of Arizona and
Weber Well Drilling Co., Respondents.

No. 8036.

Supreme Court of Arizona.

In Division.

June 3, 1965.

Herbert B. Finn and Stephen T. Meadow, Phoenix, for petitioner.

Edgar M. Delaney, Phoenix, for respondent Industrial Commission; Richard J. Daniels, Robert D. Steckner, Robert A. Slonaker, Chris T. Johnson and Frank E. Murphy, Jr., Phoenix, of counsel.

McFARLAND, Justice:

This is a writ of certiorari to review an award of The Industrial Commission of Arizona, hereinafter called the Commission, denying death benefits to the widow and minor child of Lloyd Russell, deceased.

Decedent, fifty-seven years of age at the time of his death, was an employee of the Weber Drilling Company, working in the capacity of a water well driller. There was testimony of an injury from an accident some two weeks before decedent's death, in which decedent was hit on the head with a cable, and a second injury from an accident on the Saturday before his death on May 29, 1962, at which time he was doing the work of two men, and was hurt by a blow over the heart by a "jack bar," and also was emotionally upset.

Dorothea Russell, widow of decedent, hereinafter called petitioner, testified that some three years before the first accident decedent had had a heart attack, but ever since that time he had been in good health and worked every day up to the time of the second accident, that he had worked after the first accident but hadn't felt as well as before. Then, after the second accident, before his demise Tuesday morning, he became very ill, and went home early.

On Sunday afternoon, May 27th, Mrs. Russell called Dr. Robert C. Charnetsky, who recommended that if decedent was not better by morning she should bring him to the emergency room of the hospital. On Monday morning, May 28th, decedent was admitted to Maryvale Hospital, and was examined by Dr. Charnetsky, who described the condition as cardiac decompensation with pulmonary edema. On Tuesday, May 29th, Mr. Russell expired. Dr. Charnetsky stated in the patient's record—marked "Applicant's Exhibit 'A' "—that the final diagnosis was: "cardiac decompensation with pulmonary edema," "acute myocardial infarction," "hypertension," and "pulmonary edema."

Mrs. Russell filed a widow's claim for compensation on June 21, 1962, wherein she alleged that her husband's heart condition was brought about by injury from

accident received in the course of his employment. Her claim was denied, and, after a second denial following a re-hearing, Mrs. Russell filed a petition for a writ of certiorari with this court.

The evidence in this case consisted of the medical testimony and that concerning accidents. The medical evidence consisted of the consultation report of four doctors—B. P. Frissell, J. D. Hamer, Allan I. Cohen, and Walter V. Edwards—and the testimony of Drs. Cohen, Hamer, and Charnetsky.

Both Dr. Cohen and Dr. Hamer testified that the opinion set forth in the medical report, and their opinions, were given on the basis of the records which were available, consisting of the hospital records, attending physician's notes, reports of electrocardiograms, and laboratory reports. The hospital records did not include information regarding the first accident, or that decedent had been doing the work of two men immediately before the second accident, that he had become emotionally upset, or details of his becoming ill immediately following the second accident. Both doctors testified that Russell died, as stated in the medical report, due to congestive heart failure secondary to extensive arteriosclerotic heart disease, and, in their opinion, based upon the records before the Commission available to them, the accident as described to them had nothing to do with the fatality, Dr. Cohen stating that such would be "extremely remote and very unlikely."

On cross-examination both doctors were asked hypothetical questions which principally included a summary of the testimony that Mr. Russell was involved in the two accidents, one approximately two weeks before his death, after which he continued to work but did not feel as well as before, and the other while he was working in a well pit that normally would have two men doing the work he was doing, that he had physical difficulties in handling the tools alone, that this aggravated him, and after he managed to remove the tools from the hole he climbed out of the pit and ran into a blunt object—namely, a "jack bar"—from which he received a large bruised place on the left side of the chest, which further upset him, and he exploded in a flurry of cursing, that he then became extremely ill and went to the "dog house" to lie down. The questions also described the illness that followed. Dr. Cohen pointed out that

"* * * this particular situation to which you are describing up to the point of the jackhammer is information which was not previously available to us and was never in question." [Emphasis supplied.]

and that

"What you have described is a purely stressful situation which is not unrea-

sonable to say that acutely this could precipitate the worsening of the cardiac status."

Dr. Hamer, before answering the hypothetical questions, stated that Russell's getting mad and his emotional upset and overstraining his heart doing hard work "wasn't before our consulting board," and that the doctors

"didn't know anything about what he was doing, there was nothing in the file, and that wasn't what we were asked to then base an opinion upon."

He then stated, in answer to the question as to whether the incident could have aggravated the condition:

"It could have been aggravated, yes."

Dr. Charnetsky testified that Mrs. Russell had called him on Sunday, and that Mr. Russell was admitted to the hospital on Monday morning. He stated that he did not recall whether Mrs. Russell had informed him that Mr. Russell had sustained a blow on his chest when he was admitted to the emergency room at the hospital, although he did recall that a few days after Mr. Russell's demise she had asked him whether the blow could have caused damage to the heart. He related that Mrs. Russell had given him the history of the case at the time her husband was admitted to the hospital. Then, in regard to the cause of death, the record shows the following questions and answers:

"Q As a result of your examination and the history that was given you from the treatment, and everything that you performed, did you form any opinion as to what was the cause of death?

"A As far as I could tell, he died of pulmonary edema and possibly a myocardial infarction."

On cross-examination, attorney for petitioner again set forth hypothetical questions, including substantially the same chain of events presented to Dr. Cohen and Dr. Hamer, and asked the question:

"Would you say that these incidents that I have just described would have something to do with contributing to his condition?"

The following testimony resulted:

"A The way you describe it I couldn't say otherwise. I would say that it somehow influenced the chain of events.

"Q You certainly think that this incident could have aggravated his condition?

"A Yes. All this emotional strain would have.

\*　\*　\*　\*　\*　\*

"Q And let me ask you this question:

"Would the history I have just given you be compatible or be consistent

with what you found when you examined him on Monday morning?

"A Yes, it could.

"Q There would be nothing contradictory, in other words, in what you found?

"A No."

It will be noted that Drs. Cohen and Hamer did not have all of the facts before them when they made their first report. They did not have benefit of the testimony in regard to the first accident, nor the related events in regard to the second accident—particularly the deceased being emotionally upset—and the extent of his illness immediately following the second accident. They had misunderstood the report, thinking that the symptoms described after the accident had existed for two weeks prior to the accident.

The evidence concerning the accidents consisted of the testimony of Mrs. Russell, Billy Russell, Mr. John H. Van Winkle, and Mr. Aurelius Murray Staggs.

■ The issue before this court is whether or not the findings and award of the Commission can be sustained upon the entire record now before the court. This court has upon many occasions held, in deciding this question, that if the Commission's findings are reasonably supported by the evidence, then the findings must be sustained. Magma Copper Co. v. Industrial Commission, 96 Ariz. 341, 395 P.2d 616; Phelps-Dodge, Morenci Branch v. Industrial Commission, 90 Ariz. 248, 367 P.2d 270; and Fendell v. Industrial Commission, 89 Ariz. 180, 359 P.2d 988.

■ Where a worker died from a heart attack, if his activity on the job precipitated the heart attack, or accelerated death, the petitioner meets the burden of proving the causal connection between his employment and the decedent's death. In Revles v. Industrial Commission, 88 Ariz. 67, 352 P.2d 759, this court held:

"*Second,* an industrial injury need not be the *sole* cause of death, in order to entitle decedent's dependents to death benefits, as long as it appears that the injury contributed to and accelerated the inevitable." 88 Ariz. at 74, 352 P.2d at 763.

See also Mead v. American Smelting & Refining Company, 90 Ariz. 32, 363 P.2d 930; and Hudgens v. Industrial Commission, 83 Ariz. 383, 321 P.2d 1039.

■ Dr. Charnetsky gave an unqualified answer to the hypothetical chain of events which appear in testimony uncontradicted. He stated after the description of the case that

"The way you describe it I couldn't say otherwise. I would say that it somehow influenced the chain of events."

This clearly shows that the test of causal relationship to the death of the decedent

has been met by the petitioner. The opinions of Dr. Cohen and Dr. Hamer given in direct testimony were not based upon the complete facts, and therefore are not decisive in regard to showing the causal relationship of the accidents and the death. Nor is their testimony which was given on cross-examination decisive in that it was to the effect that the related events *could* have had a causal relationship—which does not meet the test of positive testimony as set forth in the case of Helmericks v. Airesearch Manufacturing Co. of Arizona, 88 Ariz. 413, 357 P.2d 152, which holds that *possibilities* are not sufficient to show causal relationship. See also Gronowski v. Industrial Commission, 81 Ariz. 363, 306 P.2d 285; and Cross v. Industrial Commission, 81 Ariz. 222, 303 P.2d 710.

We again point out the distinction between medical versus legal cause. This court, in Tatman v. Provincial Homes, 94 Ariz. 165, 382 P.2d 573, re-affirmed the principle of Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627, which stated:

" 'The injury need not be the sole cause of disability, if it is a producing cause.' 87 Ariz. at 199, 349 P.2d at 633."

Tatman, supra, indicated this court's approval of Revles v. Industrial Commission, supra, quoted above.

The question—did the accident and the circumstances attending upon it "accelerate the inevitable" occurrence of Mr. Russell's death?—is answered in the affirmative in the testimony of Dr. Charnetsky. The real question in this case is whether the Commission's findings are reasonably supported by the evidence. To answer this question we must examine the findings of the Commission. The findings made August 7, 1962, in the instant case were as follows:

"1. That Lloyd Russell did not sustain an injury by accident arising out of and in the course of his employment.

"2. That said Lloyd Russell died on May 29, 1962 as a result of a heart condition.

"3. That applicant-widow and minor child are not entitled to death benefits under the provisions of the Act, by virtue of the premises or by reason of her claim filed herein.

"NOW, THEREFORE, IT IS ORDERED, that the application of Dorothea Russell, widow of Lloyd Russell, deceased, for death benefits filed herein, for and on behalf of herself and said minor child, be, and the same is hereby denied, and that said applicants take nothing by reason of her claim in the premises."

Then, on July 24, 1963, after the re-hearing, the Commission affirmed the findings and award in the following words:

"IT IS ORDERED that the Findings and Award entered herein on the 7th

day of August, 1962, be, and the same is hereby affirmed."

Both findings of the Commission, it will be noted, are that Lloyd Russell did not sustain injury arising out of and in the course of his employment.

The evidence of the injuries consisted of the testimony of Mrs. Russell to the effect that about two weeks before his death Mr. Russell came home, and "was kind of pale" and told her "I almost got it." He said that they were pulling a line, and the line broke. He stated that the line hit him. He described the accident and his injury, and showed her a big red spot where he had been hit, also little spots of blood on his shirt. She testified that before this accident he was working every day and was in good health; and after the accident he went ahead and worked but complained of not feeling well. Her testimony was corroborated by Mr. Van Winkle, who testified that he was working with Russell at the time of the accident which he estimated to have been about two weeks before Russell's death —that the cable had hit decedent in the side of the head. Then, in regard to the accident on the Saturday morning before Russell's death, Mrs. Russell testified that she went out to the well rig where her husband was working at about 11:30 in the morning. He was sitting "there against the side of the dog house" holding his side and was pale, and when she asked him what was the matter Mr. Russell told her that he had

got hit—that they were pulling the line and that they had to jump it from one spool to another, and that the jack bar flew back and hit him. She testified that she asked him why he didn't go to the doctor, and he told her that if it kept hurting he would shut down early. Her testimony in regard to the accident and injury was corroborated by their son, Billy Russell, who testified that he was at the rig with his father on the Saturday morning preceding Russell's death, and that he saw his father coming out of the hole, that he had been doing the work and handling the tools usually done by two men, that his father was cursing and said he had been hit by the jack bar; and that his father told him "I'm going to the dog house and rest for a minute—lay down"; and that about that time Mr. Staggs drove up, and he showed them both the red place where he had been hit over the heart. Billy also corroborated testimony of Mrs. Russell and Mr. Van Winkle in regard to the previous accident. Mr. Staggs in his testimony corroborated the testimony of Mrs. Russell and the boy. He testified that he had stopped at the rig behind the pick-up of Russell's helper, Bill Moulton, and after talking with him a minute crossed the ditch to where Russell was working. He stated that Russell said that he was feeling pretty bad; that " * * * he looked like he was kind of hurting,"

"And he showed me a bruise that he had in his left rib cage, right under the

breast of the heart, and he said he wasn't feeling very good, that he might have to go see a doctor, and I told him I would if I was him."

In Ratley v. Industrial Commission, 74 Ariz. 347, 248 P.2d 997, we said:

"In deciding whether there is substantial evidence to support the commission's findings, we are guided by the rule that the trier of the facts is the judge of the witness' credibility and is not required to accept the uncontradicted evidence of an interested party, but there are exceptions. The trier of the facts may not arbitrarily reject such uncontradicted evidence when nothing intrinsic in the evidence itself or extrinsic in the circumstances casts suspicion thereon. Further, where evidence of an interested witness is corroborated by a disinterested witness, a rejection of that evidence amounts to arbitrary action by the court. In re Gary's Estate, 69 Ariz. 228, 211 P.2d 815; Stanley v. Moan, 71 Ariz. 359, 227 P.2d 389." 74 Ariz. at 349, 248 P.2d at 998.

 The evidence of the accidents and injuries as related by the witnesses in the instant case was not contradicted. Mrs. Russell and her son, Billy, could be classified as "interested" witnesses. Van Winkle and Staggs were "disinterested" witnesses.

Van Winkle corroborated the testimony on the first accident and injury, and Staggs the second accident and injury. The evidence of both was therefore corroborated by disinterested witnesses. The Commission in its brief tries to discredit the testimony regarding the accident by saying that Mrs. Russell did not report it until a few days after Mr. Russell's death. This is understandable where a wife merely reports the illness of her husband on Sunday; he is taken to the hospital seriously ill at 4 or 5 o'clock on Monday morning; and he passes away on the following day, Tuesday. The Commission also would discredit the testimony by the failure of the petitioner to call Bill Moulton as a witness. It was just as much the duty of the Commission to call Mr. Moulton as a witness as it was of the petitioner.

It will also be noted that the record shows an affidavit of Bill Moulton had been taken by an investigator, but the Commission failed to include the affidavit in the record certified to this court. There was a letter in the file of the Commission from Bill Moulton to the Acceptance Supervisor of the Commission, in answer to a request for information contained in the statement which reads as follows:

"In referance to your letter of Sept 26, 1962 (enclosed) I have checed with all of the logical persons whom Mr. Russell might have mentione his injury

to and found that a Mister A. M. Staggs of Buckeye, Ariz. remembered the conversation that I mentioned to Wm. C. Sawyer of your office.

"Mr. Staggs is also an employee of Weber Drilling Co. but I do not know his address. Im sure you have his address in your files as he is involved with your office in a claim at the present time." (sic)

 The Commission further points to the Weber Drilling Company's report that no accident had been reported by Russell. The deceased evidently did not regard the first accident as serious, and he could not have reported the last one because it occurred on Saturday—after which he became seriously ill, was hospitalized on Monday, and died on Tuesday. We therefore hold that the evidence of injury in both accidents arising out of decedent's employment was corroborated, and under the rule set forth in Ratley, supra, its rejection by the Commission was arbitrary.

It is clear that the Commission decided the case solely upon the basis that there was no injury by accident arising out of and in the course of Mr. Russell's employment, and thereby refused to consider causal relationship of the accidents and decedent's death.

■ The findings of the Commission that there was no injury by accident arising out of and in the course of decedent's employment was arbitrary and not justified by the evidence.

The award is set aside.

BERNSTEIN and UDALL, JJ., concur.