513 P.2d 1369

Donald E. BROWN (Deceased), Gloria J. Brown (widow), Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

A. A. Drywall Corporation, Respondent Employer,

Home Insurance Company, Respondent Carrier.

No. I CA–IC 845.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 20, 1973.

Thomas E. Johnson, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Glen D. Webster, Jr., P. C., Phoenix, for respondent employer and respondent carrier.

## OPINION

DONOFRIO, Presiding Judge.

This appeal is before us on the petition of Gloria J. Brown for a writ of certiorari to review the lawfulness of an award of The Industrial Commission of Arizona denying death benefits to the petitioner-widow.

The husband of petitioner-claimant died on the 14th day of April, 1971 while employed by respondent A. A. Drywall Corporation. Thereafter, on September 24, 1971, the widow, Glorida J. Brown (petitioner), timely filed a claim for death benefits. On October 6, 1971 the respondent insurance carrier issued a notice of claim status denying the claim, and on October 22, 1971 the petitioner filed a request for hearing.

Hearings were set for March 2, 1972 and April 20, 1972, and subsequently findings and award for noncompensable claim was entered on May 19, 1972, finding that the great weight of medical evidence indicated that the decedent had a long-standing hypertensive heart disease; that his death

was due to a myocardial infarction which was the natural progression of this heart disease; and that his work activities were not a factor in either the precipitation or aggravation of the myocardial infarction and ultimate death.

The hearing officer further determined that the evidence failed to indicate that the decedent had been in a rage or heated argument preceding his myocardial infarction and to assume such rage would be merely speculation or conjecture.

Petitioner timely requested the Industrial Commission to review the findings and award on June 19, 1972. The Industrial Commission rendered its decision affirming the previous findings and award on June 28, 1972. The question for review in this case is whether the evidence presented reasonably supports the Commission's conclusion that the deceased expired as a result of a preexisting condition unrelated to and not aggravated by his employment.

In reviewing the record in the light most favorable to sustaining the award we find the facts of this case to be as follows. At the time of his death, Donald E. Brown, (the decedent), was employed by the respondent employer where his job included preparing and submitting bids, collecting bad debts, managing the office and various other financial duties. The decedent had been engaged in similar work in one capacity or another since 1952. Moreover, the early months of 1971 were extremely busy ones in that the volume of business greatly increased.

Decedent had a history of hypertension for many years and had been treated for hypertension since 1957 by James N. Lane, M.D., a general practitioner. In 1959 Dr. Lane made a diagnosis of diabetes which was controlled by diet.

The evidence reflects that the decedent and his family went on a short vacation to Mexico from April 8th through April 12th, 1971. During this vacation the decedent complained of chest pains. He returned to work on Tuesday, April 13, 1971, however, with no complaints.

On April 14, 1971 the decedent commenced work at about 8:00 a. m. At about 11:00 a. m. he was informed that one Wayne Evans had not paid his debt of approximately $1,700 to the company and that the time for filing a lien for said work had expired. Decedent became angry after he received this information. He apparently calmed down somewhat thereafter. His wife later testified that when he went home for lunch she did not observe any unusual behavior on decedent's part.

Decedent left the house at approximately 1:30 p. m., presumably to visit Evans. He returned home at approximately 3:30 p. m. with acute chest pains. He was taken immediately to Dr. Lane's office and from there to the hospital where he expired.

Although a second hearing was held in an attempt to obtain the testimony of Wayne Evans, Evans did not respond to subpoena and there is no evidence as to what occurred in the meeting between him and the decedent on April 14, 1971, or that said meeting in fact ever occurred.

■ Generally, in a so-called "heart" case, the petitioner must show that the activities of his employment bore a causal relationship to the heart attack. Jones v. Industrial Commission, 9 Ariz.App. 543, 454 P.2d 591 (1969); Phelps Dodge Corporation v. Cabarga, 79 Ariz. 148, 285 P.2d 605 (1955). Moreover, such facts pertaining to medical causation must be established to a reasonable medical probability or certainty. Micucci v. Industrial Commission, 108 Ariz. 194, 494 P.2d 1324 (1972). The Commission cannot find such a relationship based upon mere possibilities, Gronowski v. Industrial Commission of Arizona, 81 Ariz. 363, 306 P.2d 285 (1957), or where the medical evidence is fraught with uncertainty. Cross v. Industrial Commission, 81 Ariz. 222, 303 P.2d 710 (1956); Helmericks v. Airesearch Manufacturing Co. of Ariz., 88 Ariz. 413, 357 P.2d 152 (1960).

■ The main thrust of petitioner's argument was that there was circumstantial evidence of the existence of rage due to decedent's employment activities and that

such rage precipitated the heart attack. This was, of course, premised upon an assumed heated encounter between the decedent and Wayne Evans.

The medical evidence in this case was obtained from Dr. Lane, Dr. Harold Kohl, a specialist in circulatory and heart disease, and Dr. Roland V. Murphy, an internist involved primarily in cardiology.

It should be noted that only after being supplied with a hypothetical to the effect that the applicant was "in a rage" on the morning of the heart attack did Dr. Lane opine that his employment probably contributed to the heart attack. Dr. Lane's testimony prior to that point dealt only in the realm of "possibilities" when questioned about the relationship of the heart attack to the employment. He did say, however, that this is a typical fatality resulting from a natural progression of an underlying condition requiring no particular precipitating factors.

Dr. Kohl agreed with Dr. Lane that death by hypertensive cardiovascular disease can be fatal without any known precipitating factors. Dr. Kohl was then submitted a hypothetical which included the assumption that there had been an encounter between the parties and that there was tenseness but that decedent was accustomed to same. In response thereto, Dr. Kohl felt that there was no relationship between such stress and the work activity. As far as he was concerned it was just as likely the result of the underlying natural progression of the disease and that a person can build up a tolerance to pressure and stress. He testified that in order to consider as possible any cause and effect there would have to be facts indicating a real fight or violent argument between decedent and Evans. Furthermore, Dr. Kohl discounted any gradual buildup of stress as being a precipitating factor.

Dr. Murphy was the last attending physician to have seen decedent in the hospital emergency room. As did the other doctors, he agreed that a person with underlying hypertension can suffer a fatality from the natural progression of the condition. He was given a similar hypothetical and concluded that there was no relationship. Even assuming a great amount of stress, it would still only be in the realm of "possibilities."

After reviewing the record we agree with the hearing officer's conclusion that petitioner's assertion that decedent was "in a rage" is based upon speculation and conjecture. When taken in its entirety, the great weight of the medical evidence indicates that the decedent had long standing hypertensive heart disease; that his death was due to a myocardial infarction which was the natural progression of this disease; and that his work activities were not a factor in either the precipitation or aggravation of the myocardial infarction and ultimate death.

If, in fact, the decedent had engaged in a heated argument with Wayne Evans just prior to the onset of symptoms, or had been "in a rage" at that time, then the infarction might well have been precipitated by that rage. However, there is no evidence as to what occurred at the time the decedent met with Wayne Evans, and any findings by the Commission based upon events that occurred at that meeting would be based upon speculation and conjecture. In re Estate of Bedwell, 104 Ariz. 443, 454 P.2d 985 (1969).

We find reasonable evidence to support the Commission's finding that petitioner failed to sustain her burden of showing that the heart attack arose out of and in the course of decedent's employment.

Affirmed.

OGG and STEVENS, JJ., concur.