585 P.2d 257

CITY OF PHOENIX and State Compensation Fund, Petitioners,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

George M. Loy, Respondent Employee.

No. 1 CA–IC 1842.

Court of Appeals of Arizona,
Division 1,
Department C.

Aug. 22, 1978.

Rehearing Denied Sept. 19, 1978.

Review Denied Oct. 11, 1978.

Robert K. Park, Chief Counsel, State Compensation Fund by Peter C. Kilgard, Phoenix, for petitioners.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Jerome & Gibson, P. C. by D. A. Jerome, Phoenix, for respondent employee.

OPINION

NELSON, Judge.

This special action challenges an award of the Industrial Commission allowing workmen's compensation benefits to a 48 year old applicant who suffered a heart attack while at home on vacation leave.

George Loy, the applicant, was hired in 1960 by the Phoenix Police Department as a patrolman. In 1971 he was transferred to the Police Employment Services Bureau as a background investigator. His responsibilities included screening all civilian applicants for the Bureau, interviewing, arranging polygraph examinations, and filling all vacancies as well as federally and city funded positions when grants were made available. His workload had increased markedly during his years in the department, and he often had to fill many positions in a matter of days when grants came through or budgetary freezes were lifted. The evidence is undisputed that this was a stressful job situation.

On July 2, 1976, Loy suffered a myocardial infarction. At the time, he was on his second day of a short vacation leave, sitting at the breakfast table waiting for some concrete to be delivered for a home improvement project. His medical history indicated that Loy had been experiencing

chest pains which he attributed to indigestion for two or three years prior to the attack. He was a social drinker and smoked 1½ packs of cigarettes a day. Additional coronary risk factors exhibited by Loy included hyperuricemia, gout, hypertension, hyperlipidemia and exogenous obesity.

The question before the Court in this action is whether Mr. Loy's heart attack was sufficiently causally related to his employment to merit the award of workmen's compensation benefits. We hold that it was not.

The hearing officer in his ultimate finding number 8[1] evaluated the evidence as follows:

"8. Although both Dr. Long and Dr. Rappoport agreed that applicant's employment or employment related activities which may have caused stress was not the immediate cause of the heart attack which applicant suffered, it appeared to the undersigned Hearing Officer that both agreed that applicant's employment or employment-caused stress was an indirect cause in that it activated, precipitated or aggravated an underlying disease process that led to the myocardial infarction. Although Dr. Long's opinion was expressed in a more positive fashion, it was not contradicted by Dr. Rappoport to the extent of creating a conflict in testimony. Where one doctor said employment *caused* a heart attack and another said it *may have accelerated* it, there was no conflict in testimony. *Scoggins v. Industrial Commission,* 14 Ariz. App. 233, 482 P.2d 482 (1971). In essence, one doctor indicated work activities did cause the underlying disease process to be activated, hastened or aggravated to an extent leading to a heart attack, while the other doctor indicated it may have." (Emphasis in original)

We can find nothing so positive in the testimony. Two physicians with an expertise in cardiology testified. Dr. Rappoport, one of Loy's treating cardiologists, testified

that to a reasonable degree of medical certainty he believed there was no causal relationship between his employment and his heart attack.

The most equivocal Dr. Rappoport ever became was when he answered a question as follows:

"A. For—for his work to have caused his attack, I believe firmly that there has to be a direct temporal relationship between the performance of a physical work of whatever type and the occurrence of the coronary event. For something such as stress, which is hard to measure, you can't put a number on it, you can't evaluate what it's doing to an individual, to affect a disease process that one can't look at now and know what it even looks like inside this patient's heart, we don't even know that he has coronary atherosclerosis for sure. I think—and then, for the attack to occur at a point in time when he was not even at work, when he was on vacation, apparently relaxing, I think it's clear that the stress involved in his work didn't cause his attack. Could it have accelerated the development of whatever disease caused his attack? That's possible."

Dr. Long, an internist specializing in cardiology, treated Loy when he was admitted to the hospital. Dr. Long testified that Loy was suffering from underlying coronary heart disease at the time of his attack. His testimony in pertinent part was as follows:

"Q. BY MR. JEROME: Does prolonged psychological distress cause premature onset of congestive heart failure in patients with pre-existing heart disease?

A. Oh, I'd have problems saying that. I would—I would—I would say no, I couldn't—"

Dr. Long then was presented with a lengthy hypothetical which detailed Mr. Loy's work stresses and then asked:

". . . *could* the above-mentioned events herein enumerated so aggravate the underlying coronary disease process

---

1. The hearing officer, upon reviewing his award at the request of the petitioners, filed an amended award which reached the same conclusion and was almost completely identical except for one additional paragraph which will be referred to *infra.*

as to precipitate, activate, or hasten the progression of an active or latent condition by placing a strain on the pre-existent diseased heart to the point where equilibrium between blood demand of his myocardium and that supplied to it by his diseased coronary arterial system was disturbed, thereby leading to the development of angina factors and finally an acute myocardial infarction? Do you have an opinion? What is your opinion? (Emphasis added)

\*     \*     \*     \*     \*     \*

A. THE WITNESS: Yes, I think it may.

Q. BY MR. JEROME: Could you say that to a reasonable degree of medical probability?

2.      HYPOTHETICAL QUESTION

"Assume a 48 year old white male police officer assigned to the Employment Service Bureau of the Phoenix Police Department, said assigned officer being designated as a background investigator with a record of 16 years on the Phoenix Police Department.

Assume that this police officer is in charge of selecting, interviewing, arranging polygraphs of civilian employees for a total of approximately 400 civilian positions, which civilian positions numbered approximately 150 several years ago. To keep these positions filled this police officer was required to be aware of all jobs that were to come open; that this officer be consistently arranging and testing applicants through the City of Phoenix testing procedures, including but not limited to filling requirements for personnel after screening prospects from the City of Phoenix eligibility list. It should be noted that this officer must be aware of approximately 40–45 job classifications for which he must interview civilian applicants.

Assume further that this officer must deal with high ranking officers such as police lieutenants, captains, majors, division chiefs, and with the five chiefs in the Phoenix Police Department, and that part of this police officer's job is to keep these high ranking officers happy when they are demanding personnel immediately, which is most of the time.

Assume further that this officer is required to handle federal funding in his section, which required him to detail the use of federal funds and account therefor within the purview of the federal guidelines for public service employment and the affirmative action policy of the City of Phoenix, which includes the employment of minority and ethnic groups, and all

A. I would."

The witness later clarified his statement by saying:

"No. In my opinion, the process that occurs as responsible for ischemic heart disease can be the emotional stress, be it job related or otherwise. That's that part of that answer. I was not at any point in time aware that I had intimated that I believed any particular point of stress, job related or otherwise, had a precipitating cause. I didn't know. I don't know that anyone can define that."

In spite of the carefully prepared hypothetical question, specifically made part of the record in addition to being transcribed by the court reporter as it was asked [2], this

should be cleared with and through the City Personnel Department, the Department of Budget Research, and the State Department of Economic Security Administration.

In addition to the foregoing responsibilities, this officer had to be concerned about sick leave, maternity leaves, promotions and demotions in the civilian classifications and that these ran approximately to 200–300 handlings a year. This was over and above the walk-in interviews and processing of people for employment on a conditional basis until these conditionally hired people's backgrounds were verified by investigation. You are to assume further that this police officer was required to aid City Personnel Department in giving written examinations to approximately 1,000 people, which exams were done on holidays. You are further to assume that any and all economic problems, which were many in 1974 and 1975 & 76 due to budgetary problems in the city budget, and that this budgetary problem created a backlog of civilian jobs to be filled by this police officer, numbering about 90 civilian job vacancies, and these were held up by and through the City Manager's office because of budgetary matters which vacancies created great pressure on this police officer from his superior officers to get them filled.

There was no specific priority set for this police officer to fill these vacant positions and part of his daily problem in 1976, in the month of May, was the insistence of command level officers to get these jobs filled promptly. This police officer has had annual physical checkups at the Health Evaluation Center of the Arizona Health Plan and, in December of 1975, had a complete physical with an electrocardiogram which showed no evidence of coronary heart disease. That this police officer, a social drink-

testimony is equivocal at best. The only definitive part of it is the statement that the doctor could not attribute the precipitating cause of the attack to work stress.

The dilemma the hearing officer felt himself to be in is reflected in his finding # 6, added when he reviewed his original award:

"6. In reviewing cases and authorities it might be argued that entitlement to compensation benefits is based upon legal causation and not medical causation; and that legal causation requires that the employment activities be proximate and materially contribute to the production of the disability or death.

It might further be argued that the employment activities in the case at bar are remote from the infarction and have not materially aggravated or contributed to the underlying disease so as to have produced a recognizable definite temporal acceleration of the occurrence of the infarct. (Citations and quotations omitted)

However, it can also be argued that if in any way employment related events contributed to or hastened or accelerated a disability, then the resulting disability is compensable. The response to the hypothetical question in this case would seem to indicate that work related events indirectly contributed to or hastened the onset of the myocardial infarct. Furthermore, it is not necessarily a consequence that because a cause is an indirect cause, it must necessarily be considered to be a 'remote' cause and not 'proximate.' Perhaps compensability in this case is ex-

tending employer responsibility too far. If so, it is up to the courts and/or legislature to more accurately define the parameters of 'compensable' heart claims."

■ A heart attack can be a compensable injury under our workmen's compensation laws provided there is sufficient medical evidence to support a finding that the worker's job "precipitated or accelerated" *the attack. McNeely v. Industrial Commission,* 108 Ariz. 453, 501 P.2d 555 (1972). *See also Reynolds Metal Company v. Industrial Commission,* 22 Ariz.App. 349, 527 P.2d 308 (1974). No such evidence exists here. As we noted in *Brown v. Industrial Commission,* 20 Ariz.App. 486, 513 P.2d 1369 (1973), another emotional stress case, the causal relationship between the work stress and the attack must be demonstrated by the petitioner through medical testimony. Moreover, this causation must be established to a reasonable degree of medical certainty or at least probability. "The Commission cannot find such a relationship based upon mere possibilities, *Gronowski v. Industrial Commission of Arizona,* 81 Ariz. 363, 306 P.2d 285 (1957), or where the medical evidence is fraught with uncertainty. *Cross v. Industrial Commission,* 81 Ariz. 222, 303 P.2d 710 (1956)." *Brown, supra,* 20 Ariz.App. at 487, 513 P.2d at 1370.

■ The burden here was on the petitioner to show a causal relationship between his heart attack and work related stress. The testimony is far too vague to establish that connection. The fact that Loy's employment provided a setting for

---

er and a smoker of approximately 1½ packs a day, and an officer who has had some history and treatment for hypertension, was at his home on July 2, 1976, and experienced severe pains in his chest radiating into his left upper extremity, and was hospitalized at John C. Lincoln Hospital with an acute myocardial infarction. This police officer's past medical history reveals the usual childhood diseases without sequelae.

That this police officer is married and is presently performing light duty work at the Police Department.

Doctor, on the basis of this man's combination of admissions history, the history of retrosternal aching type discomfort without radiation for approximately a year and a half prior

to his myocardial infarction, the findings of the John C. Lincoln Hospital, detailed job description placed on this police officer, and the medical data set forth in this hypothetical question, could the above-mentioned events herein enumerated so aggravate the underlying coronary disease process as to precipitate, activate, or hasten the progression of an active or latent condition by placing a strain on the pre-existent diseased heart to the point where equilibrium between blood demand of his myocardium and that supplied to it by his diseased coronary arterial system was disturbed, thereby leading to the development of angina factors and finally an acute myocardial infarction? Do you have an opinion? What is your opinion?"

the maturation of Loy's heart disease is insufficient to establish a causal connection between his work and the heart attack. *Kinsman v. Industrial Commission,* 6 Ariz. App. 609, 435 P.2d 52 (1968).

Were it otherwise, very few heart attacks, if any, suffered by people who were employed at the time of the attack, regardless of whether the incident occurred at work, at home, on vacation, or while they were asleep, would not be compensable under the workmen's compensation statutes. While we do not minimize the stress imposed on Loy as a result of his job, we fail to see it as significantly greater than that imposed upon his fellow police officers on the beat, his superiors, court clerks who are put upon by not only their immediate supervisors but also by judges and irate lawyers, outside the apparent chain of command, etc. In fact, most jobs covered by workmen's compensation today, in both the public sector and private industry, have a stress component of some nature, depending both upon the individual who holds the job and the nature of the job itself.

If we read the doctors' testimony correctly, all of these people so employed, who also happen to have an underlying heart condition, will be affected to some degree by this stress as it relates to their heart disease, together with other factors such as were present with Loy in this case, i. e., drinking, smoking, obesity, high blood pressure, etc. We cannot read the court decisions of this state or the workmen's compensation statutes to extend coverage for heart attacks *caused by* an underlying heart disease (as opposed to an immediate physical exertion or emotional or stressful trauma related to the job) which was in turn accelerated by, along with many other non-work related factors, the stress of a person's particular employment situation. As recognized by the hearing officer, if such an all-encompassing risk is to be imposed upon the employers and insurance carriers of this state, it is up to the legislature to do so in clear and unequivocal terms.

The award is set aside.

SCHROEDER, P. J., and OGG, J., concur.