NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BERNICE M. SANDERS, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

BOWIE INVESTMENT GROUP, INC., *Respondent Employer*,

AMERICAN LIBERTY INSURANCE COMPANY, *Respondent Carrier*.

No. 1 CA-IC 17-0011
FILED 11-14-2017

Special Action - Industrial Commission
ICA Claim No. 20143-530186
Carrier Claim No. 14562184

Deborah Nye, Administrative Law Judge (Retired)

**AWARD AFFIRMED**

COUNSEL

Bernice M. Sanders, Phoenix
*Petitioner*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent ICA*

Lundmark, Barberich, LaMont & Slavin, P.C., Phoenix
By Kirk A. Barberich, Danielle S. Vukonich
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

---

**W I N T H R O P**, Presiding Judge:

¶1        This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review finding the claim of the petitioner employee, Bernice M. Sanders, not compensable. The administrative law judge ("ALJ") resolved the issues in favor of the respondent employer, Bowie Investment Group, Inc. ("Bowie"), and the respondent carrier, American Liberty Insurance Co. ("ALI") (collectively, "Respondents"). Because the ALJ's determinations are reasonably supported by substantial evidence, we affirm the award and decision upon review.

**FACTS AND PROCEDURAL HISTORY**[1]

¶2        Sanders was employed by Bowie as an in-home health care worker when she allegedly sustained a gradual work injury to her right shoulder. She first noticed shoulder pain in July 2013, and first mentioned it in passing to her primary care physician, Dr. Baoan Andy G. Le, on March 12, 2014. Sanders initially received conservative treatment, but in August 2014, she went to the emergency room complaining of significant right shoulder pain. Sanders underwent an MRI and was diagnosed with a rotator cuff tear. On September 30, 2014, Dr. Phillip Bennion performed surgery on Sanders' right shoulder.

¶3        On December 17, 2014, Sanders filed a worker's compensation claim, and she underwent a follow-up right shoulder surgery in May 2015. In the meantime, ALI issued a Notice of Claim Status denying Sanders'

---

[1]        We consider the facts and inferences therefrom in the light most favorable to sustaining the award. *See Malinski v. Indus. Comm'n*, 103 Ariz. 213, 216 (1968).

claim, and she timely requested a hearing with the ICA. Her request for hearing was dismissed, however, after the ALJ found she had shown no good cause for her failure to appear at a July 9, 2015 hearing[2] and scheduled independent medical examination ("IME"). Because the record failed to show that Sanders had received notice of either the July 9 hearing or the IME, however, this court set aside the award and decision upon review, and remanded the case to the ICA for further proceedings. *See Sanders v. Indus. Comm'n*, 1 CA-IC 15-0060, 2016 WL 2909377 (Ariz. App. May 19, 2016) (mem. decision).

¶4 On remand, the ALJ held formal hearings on December 19 and 22, 2016, and January 17, 2017. Respondents raised additional affirmative defenses of failure to forthwith report the injury and untimely filing of a claim, *see* Ariz. Rev. Stat. ("A.R.S.") §§ 23-908(E) (Supp. 2016), -1061(A) (2016), and the ALJ heard testimony from (1) Sanders, (2) Horne, (3) Dr. Le, and (4) Dr. Irwin Shapiro, who performed the IME.

¶5 Dr. Le, a board-certified family medicine physician, testified that Sanders first came to him on March 12, 2014, after having been referred by an urgent care provider for follow-up care for an injured foot. Sanders complained of foot pain, right shoulder pain, a cough, and congestion. Regarding the right shoulder, Sanders did not report any related accident or work-related incident, and Dr. Le did not fill out an ICA physician report of injury.[3] Dr. Le did not know the onset of the shoulder problem, but stated he was "under the impression" the pain was due to Sanders' work, and he believed the shoulder pain had been ongoing "for a few weeks." On examination, Dr. Le found Sanders' right shoulder to be tender with a decreased range of motion. Dr. Le initially ordered conservative treatment, including some pain medicine and a referral for physical therapy. He later ordered x-rays and treated Sanders with cortisone injections and continued physical therapy. Following an MRI in September 2014, and an evaluation by Dr. Bennion, Sanders was diagnosed with a rotator cuff tear. Dr. Le testified that "[Sanders'] work might have contributed to the shoulder" injury "through wear and tear and through heavy lifting," and he noted "that's the only thing I could think of that is possibly a cause for her shoulder injury." Dr. Le also testified that he discussed with Sanders on

---

[2]	The ALJ had conducted an initial hearing on June 12, 2015, at which Sanders and the assistant director at Bowie, Alicia Horne, testified.

[3]	Sanders testified that, when she went to Dr. Le, she did not inform the doctor she had been injured at work because she did not believe she was actually injured or associate any possible injury with her work.

March 12, 2014, that her duties as a home health care aide "might" be contributing to her shoulder condition.

¶6        Dr. Irwin Shapiro, a board-certified orthopedic surgeon, testified that he conducted an IME of Sanders on November 23, 2016. Dr. Shapiro testified that Sanders did not describe to him a specific injurious or accidental event; instead, she described her various care-taking responsibilities and the resulting "soreness" that followed. Dr. Shapiro also stated he had reviewed Dr. Bennion's September 30, 2014 operative report. As noted in his records, Dr. Bennion had interpreted Sanders' September 2014 MRI as showing a low-grade partial supraspinatus tear with rotator cuff impingement and symptomatic AC joint arthrosis. Dr. Shapiro summarized Dr. Bennion's operative report as follows:

> On 9/30/14 [Dr. Bennion's] operative report indicated that he was operating on [Sanders'] right shoulder specifically for right AC joint arthrosis and subacromial impingement, although his operative report indicated that there was some minor fraying of the labrum, no full thickness tears were noted, no high grade partial tears were noted. In fact, he documented, "at most, 5 percent involvement of the articular [side] of the rotator cuff," indicating basically some fraying, but it was rather insignificant, and he did a resection of the AC joint.

Dr. Shapiro opined that Sanders' work activities were not a contributing factor to her impingement or AC joint arthrosis, or her need for treatment and surgeries, and he testified that his opinions set forth in his IME report and during his testimony were provided within a reasonable degree of medical probability.

¶7        On January 24, 2017, the ALJ issued her award denying Sanders' claim. First, the ALJ found Sanders had timely filed her claim. Second, the ALJ addressed the issue of compensability and, adopting the opinions of Dr. Shapiro as more probably correct, concluded Sanders' injury "was not by accident arising out of and in the course of her employment." Accordingly, the ALJ found the claim non-compensable.[4]

---

[4]        Having found the claim non-compensable, the ALJ declined to address the second affirmative defense raised of failure to forthwith report, after concluding "such a defense would only impose a penalty in the event a compensable claim w[as] granted."

**¶8**        Sanders requested review of the award, and on February 9, 2017, the ALJ issued her decision upon review summarily affirming the award.  Sanders filed a timely petition for special action, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(2) (2016) and 23-951(A) (2012), and Rule 10 of the Arizona Rules of Procedure for Special Actions.

## ANALYSIS

### I.        Standard of Review

**¶9**        In general, the claimant bears the burden of establishing the material elements of her claim, including that her condition is causally related to a work-related injury.  *See In re Estate of Bedwell*, 104 Ariz. 443, 444 (1969); *T.W.M. Custom Framing v. Indus. Comm'n*, 198 Ariz. 41, 45-46, ¶ 12 (App. 2000).

**¶10**       If it is not readily apparent to a layman, then the physical condition of an injured employee after an industrial incident and the causal relationship of the industrial incident to such condition must be answered by expert medical evidence.  *See Yates v. Indus. Comm'n*, 116 Ariz. 125, 127 (App. 1977); *Eldorado Ins. Co. v. Indus. Comm'n*, 27 Ariz. App. 667, 670 (1976); *Spears v. Indus. Comm'n*, 20 Ariz. App. 406, 407 (1973).  Generally, a medical expert must state an opinion with a degree of medical probability, and suggestions of possibilities are insufficient to sustain an award.  *See Helmericks v. AiResearch Mfg. Co.*, 88 Ariz. 413, 416 (1960); *Gronowski v. Indus. Comm'n*, 81 Ariz. 363, 366-67 (1957); *Honeywell, Inc. v. Litchett*, 146 Ariz. 328, 331 (App. 1985).  The ALJ resolves conflicts in the medical evidence, draws warranted inferences, and is the sole judge of witnesses' credibility.  *See Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988); *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398 (1975); *Malinski*, 103 Ariz. at 217; *Holding v. Indus. Comm'n*, 139 Ariz. 548, 551 (App. 1984).  An ALJ may reject testimony that is inherently inconsistent and contradictory, or when inferences can be drawn from other evidence that cast doubt upon its credibility.  *Wimmer v. Indus. Comm'n*, 15 Ariz. App. 543, 544 (1971).

**¶11**       We deferentially review the ALJ's factual findings, but independently review any legal conclusions.  *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003).  We will uphold the ALJ's findings if reasonably supported by substantial evidence.  *See generally Carousel Snack Bar*, 156 Ariz. at 46; *Malinski*, 103 Ariz. at 216-17.

*II.     The Merits*

**¶12**          Sanders argues the ALJ's award should be vacated and the matter remanded for a new hearing.  The ALJ was asked to resolve a conflict in the medical evidence regarding whether Sanders' right shoulder condition was causally related to a work-related injury, and the ALJ resolved the conflict in favor of Respondents, finding the opinion of Dr. Shapiro more probably correct than that of Dr. Le.  Finding no abuse of the ALJ's discretion, and concluding the ALJ's award is reasonably supported by substantial evidence, we affirm the award.

**¶13**          In this case, Dr. Le opined that Sanders' work "might" have contributed to her shoulder condition.  Dr. Le's opinions were rendered only as possibilities, and were not offered within a reasonable degree of medical probability, the standard required for admissible expert medical opinion.  *See Helmericks*, 88 Ariz. at 416; *Gronowski*, 81 Ariz. at 366-67; *Honeywell*, 146 Ariz. at 331.  Dr. Shapiro, on the other hand, opined within a reasonable degree of medical probability that Sanders' work activities did not cause or contribute to the condition for which Sanders underwent treatment and, ultimately, two surgeries.  To the extent there was a conflict in the admissible expert testimony, the ALJ resolved the conflict in favor of Dr. Shapiro, and on this record, did not abuse her discretion in finding Dr. Shapiro's opinion to be more probably correct and well-founded regarding Sanders' condition.  On appeal, Sanders fails to demonstrate that the ALJ erred in finding Dr. Shapiro more probably correct and her claim non-compensable.

**¶14**          Sanders also argues that she requested—both in her answers to interrogatories and at the close of evidence at the January 17, 2017 hearing—that she be allowed to subpoena Dr. Bennion and her physical therapist to testify on her behalf.  Under Arizona Administrative Code ("A.A.C.") R20-5-141(A)(2), "[a] party may request a presiding administrative law judge to issue a subpoena to compel the appearance of an expert medical witness by filing a written request with the presiding administrative law judge at least 20 days before the date of the first scheduled hearing."  The record does not reflect that Sanders followed this procedure, and she made no offer of proof before the ALJ as to what material, admissible, and necessary testimony she believed Dr. Bennion or her physical therapist would provide.  *See generally* A.A.C. R20-5-141(A)(3).  Moreover, at this stage of the proceedings (compensability), the ALJ was not deciding the *extent* of Sanders' alleged injury, but rather whether it arose out of her employment.  As submitted to the ALJ, Dr. Bennion's records, including his September 30, 2014 operative report, provide no

suggestion that Sanders' work activities were causally related to the right shoulder condition for which she underwent surgery. On this record, the ALJ did not abuse her discretion in declining to grant a continued hearing and issue a subpoena for Dr. Bennion or Sanders' physical therapist.

**¶15**　　　　Sanders also suggests the witnesses who testified in opposition to her claim were untruthful. Resolution of conflicts in the evidence and the credibility of the witnesses was for the ALJ, not this court, to decide. *See Carousel Snack Bar*, 156 Ariz. at 46; *Perry*, 112 Ariz. at 398; *Malinski*, 103 Ariz. at 217; *Holding*, 139 Ariz. at 551. Moreover, although Sanders challenges the testimony of Horne and Dr. Shapiro, she had the opportunity to address any alleged errors in their testimony through cross-examination and by presenting any additional medical reports and/or qualified admissible expert testimony contradicting Dr. Shapiro's testimony at the hearing.

**¶16**　　　　Finally, Sanders suggests the ALJ was biased against her and conducted some questioning of witnesses herself. The transcripts provided do not reflect the bias claimed by Sanders. Moreover, "[a] trial judge is more than an umpire, and may participate in the examination of witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition." *United States v. Nash*, 115 F.3d 1431, 1440 (9th Cir. 1997) (citation omitted). The questioning by the ALJ in this case was not improper.

## CONCLUSION

**¶17**　　　　We affirm the ALJ's award and decision upon review finding Sanders' claim not compensable.



AMY M. WOOD • Clerk of the Court
FILED: AA